[No. B082962. Second Dist., Div. One. July 20, 1994.]

ROCKWELL INTERNATIONAL CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
AETNA CASUALTY AND SURETY COMPANY et al., Real Parties in
Interest.

**COUNSEL**

Hill, Wynne, Troop & Meisinger, Kirk A. Pasich, Curtis D. Porterfield, Karen L. Palladino and Aneeta Kumar for Petitioner.

No appearance for Respondent.

McElroy, Deutsch & Mulvaney, Laurence M. McHeffey, Sedgwick, Detert, Moran & Arnold, Tod I. Zuckerman, Jeffrey R. Smith and Richard A. Janisch for Real Parties in Interest.

## OPINION

**VOGEL (Miriam A.), J.**—The primary issue before us is whether the standard cooperation clause included in every third party liability insurance policy operates as a contractual waiver of the insured's attorney-client privilege in the event of coverage litigation between the insured and its insurer. For the reasons explained below, our answer is a resounding no.

### BACKGROUND

From 1953 to 1986, Rockwell International Corporation was insured under several dozen primary, excess and umbrella liability policies issued by more than 40 carriers. Without exception, the policies all included standard cooperation clauses: "The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, and the Company shall reimburse the insured for any expense, other than loss of earnings, incurred at the Company's request. . . ."

In the 1980's, Rockwell was named as a defendant in a variety of environmental contamination lawsuits. Some of these third party actions were based on Rockwell's disposal of hazardous wastes at the Stringfellow Acid Pits in Glen Avon and at the Operating Industries, Inc., site in Monterey Park. Others charged Rockwell with contaminating the groundwater in the areas surrounding its laboratories and plants in Santa Susana, Newbury Park, Canoga Park and several out-of-state locations (including Kentucky, Michigan, Oklahoma, Ohio, Nevada, Illinois, Mississippi and Pennsylvania). When Rockwell tendered defense of these actions to its carriers, some agreed to defend subject to reservations of rights and others simply declined outright.

In 1992, Rockwell sued its carriers for declaratory relief and breach of contract.[1] During discovery, Rockwell withheld certain documents and consultants' reports, asserting the attorney-client privilege and the work product

---

[1] The defendants are Aetna Casualty and Surety Company, AIU Insurance Company, Allianz Underwriters Insurance Company, Allstate Insurance Company, American Centennial Insurance Company, American Home Assurance Company, The American Insurance Company, American Motorists Insurance Company, Associated International Insurance Company, Certain Underwriters at Lloyd's, London, Commercial Union Insurance Companies, Employers Insurance of Wausau, Evanston Insurance Company, Federal Insurance Company, First State Insurance Company, Government Employees Insurance Company, Granite State Insurance Company, Great American Insurance Company, Harbor Insurance Company, Highlands Insurance Company, Home Insurance Company, Industrial Indemnity Company, Insurance

doctrine. As required by a case-management order, Rockwell identified the affected documents in privilege logs and provided those logs to the carriers. The carriers moved to compel production, contending (1) the cooperation clause in the insurance policies abrogated Rockwell's attorney-client privilege; (2) Rockwell's decision to sue its carriers placed its conduct "in issue" and thereby waived whatever privilege might otherwise have existed; (3) the carriers' "common interest" makes it a "joint client" so that Rockwell cannot assert the privilege in this litigation; and (4) consultants' reports, withheld as work product, were prepared before this action was filed and thus must be disclosed or (5) must be produced because the carriers need them and cannot elsewhere obtain the same information.

Over Rockwell's opposition, a discovery referee (Hon. Philip M. Saeta, Ret.) accepted the cooperation clause and work product arguments (he rejected the "in issue" and "common interest" theories) and prepared a report for the trial court (Hon. William Burby). Rockwell's request for reconsideration by the referee was denied, the carriers' request for sanctions for a frivolous motion for reconsideration was granted, and the trial court thereafter approved all of the referee's recommendations and ordered production of the documents. By a petition for a writ of mandate, Rockwell sought our intervention. We stayed the trial court's orders, requested opposition and set the matter for argument. For the reasons explained below, we now issue a writ as prayed.

## DISCUSSION

### I.

### *The Cooperation Clause Conundrum*

The carriers contend the cooperation clause "negates any expectation of confidentiality Rockwell might have had regarding documents generated in the underlying actions," imposes a broad duty of cooperation which is without limitation or qualification, and requires Rockwell to disclose the content of any and all communications it had with defense counsel representing it in the underlying actions. We consider the theory fanciful, and

---

Company of North America, International Insurance Company, International Surplus Lines Insurance Company, Interstate Fire and Casualty Company, Lexington Insurance Company, London Guarantee and Accident Company, National Surety Corporation, National Union Fire Insurance Company, North River Insurance Company, Old Republic Insurance Company, Pacific Indemnity Company, Republic Insurance Company, Royal Indemnity Company, Royal Insurance Group, Safety Mutual Casualty Corporation, St. Paul Surplus Lines Insurance Company, Travelers Indemnity Company, Travelers Insurance Companies, Twin City Fire Insurance Company, Vanliner Insurance Company, and Zurich International.

refuse to adopt the rules announced by the Illinois Supreme Court in a similar case, *Waste Management* v. *Intern. Surplus Lines* (1991) 144 Ill.2d 178 [161 Ill.Dec. 774, 579 N.E.2d 322].

## A.

Under Evidence Code section 917, "[w]henever a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in confidence in the course of the attorney-client . . . relationship, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential." According to the carriers, this presumption is overcome by the cooperation clause in their policies which, they contend, "renders any expectation of attorney-client privilege . . . unreasonable." (*Waste Management* v. *Intern. Surplus Lines, supra,* 579 N.E.2d at p. 328.)

In *Waste Management*, the insureds were sued for personal injuries and property damage arising from the disposal of toxic wastes at the insured's landfill (the Miller action). The insureds paid for their own defense and settled the Miller action, having first obtained the insurers' agreement that they would not contest the reasonableness of the settlement. But when the insureds sought indemnification from their carriers, coverage was denied and the insureds and insurers sued each other. According to the insureds, they had performed all conditions required by their policies. According to the carriers, the insureds had failed to provide timely notice, not of the Miller action but of another, related lawsuit (the Nunn action, the insured's litigation with the landfill's prior owner about whether the site was negligently designed), which the carrier contended was a breach of the cooperation clause. During discovery, the insured refused to produce certain documents from the Miller and Nunn actions, claiming attorney-client privilege. (*Waste Management* v. *Intern. Surplus Lines, supra,* 579 N.E.2d at p. 325.)

This is what *Waste Management* holds: "The cooperation clause . . . imposes upon insureds the duty to assist insurers in the conduct of suits and in enforcing any right to contribution or indemnity against persons potentially liable to insureds. Further, the policy provides that insurers are entitled to conduct any claim, in the name of insureds, for indemnity or damages against persons, and that insureds 'shall give all such information and assistance as the insurers may reasonably require.'

"Here, the cooperation clause imposes a broad duty of cooperation and is without limitation or qualification. It represents the contractual obligations

imposed upon and accepted by insureds at the time they entered into the agreement with insurers. In light of the plain language of the cooperation clause in particular, and language in the policy as a whole, it cannot seriously be contended that insureds would not be required to disclose contents of any communications they had with defense counsel representing them on a claim for which insurers had the ultimate duty to satisfy. . . . [¶] . . . Insureds' duty to cooperate . . . did not end with the termination of the underlying lawsuit . . . . The fact that the parties are now adverse concerning the interpretation of [the terms of the policy] does not negate insureds' contractual duty. [¶] A fair reading of the terms of the contract renders any expectation of attorney-client privilege, under these circumstances, unreasonable. We conclude that the element of confidentiality is wanting and, therefore, the attorney-client privilege does not apply to bar discovery of the communications in the underlying lawsuits." (*Waste Management* v. *Intern. Surplus Lines, supra*, 579 N.E.2d at pp. 327-328.)

In our view, there are several problems with *Waste Management*'s analysis.

### B.

First, there is the plain language of the clause which, by any rational reading, requires the insured's cooperation without so much as a hint that communications from the insured to its attorney in furtherance of the insured's duty to cooperate in the defense of the underlying action should occur without an expectation of confidentiality. This is what the policy provides: "The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, and the Company shall reimburse the insured for any expense, other than loss of earnings, incurred at the Company's request. . . ." (See *Valladao* v. *Fireman's Fund Indem. Co.* (1939) 13 Cal.2d 322, 328-330 [89 P.2d 643] [the purpose of a cooperation clause is to permit an insurer to present a complete defense of its insured in the underlying action]; 8 Appleman, Insurance Law and Practice (1981) § 4771, p. 213 [the purpose of the cooperation clause is to prevent collusion between the insured and the injured person]; *National Auto. & Casualty Ins. Co.* v. *Stewart* (1990) 223 Cal.App.3d 452, 458-459 [272 Cal.Rptr. 625] [the "opinion of a linguist or other expert as to the meaning of the policy is

irrelevant to the court's task of interpreting the policy as read and understood by a reasonable lay person"]; Keeton & Widiss, Insurance Law (1988) § 7.3, pp. 779-780.)[2]

### C.

Second, there is the carriers' concession that, at the time the standard cooperation clause was drafted, its drafter did not consider or intend that it would operate as a waiver of the attorney-client privilege in this situation or in any situation. (*Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 [204 Cal.Rptr. 435, 682 P.2d 1100] [the testimony of the drafter of a particular policy provision is admissible to explain its meaning provided the policy language is reasonably susceptible to the interpretation placed upon it by the drafter].)

### D.

Third, the suggestion that the cooperation clause abrogates the insured's expectation of confidentiality and thus destroys the attorney-client privilege ignores California's legislative declaration that where, as here, a conflict exists because an insurer has reserved its rights, the insured is entitled to independent counsel and to a relationship with that counsel free from the fear of disclosure of privileged communications.

■ When an insurer provides an unconditional defense for its insured, the insured and the carrier share the same goal—minimizing or eliminating liability in the third party action—and no conflict of interest inhibits the ability of one lawyer to represent both the insurer and its insured. (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 364 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].) But where the carrier questions the availability of coverage and provides a defense in the third party action subject to a reservation of rights, a conflict exists—because the insured's

[2]The provision quoted in the text is from a Pacific Indemnity Company policy, which the parties have agreed is representative of similar, if not identical, provisions in all of the policies at issue in this case. The 1984 Insurance Service Office, Inc. (ISO) standard form commercial general liability policy is slightly different: "You [the named insured] must see to it that we [the carrier] are notified promptly of an 'occurrence' which may result in a claim. . . . [¶] If a claim is made or 'suit' is brought against any insured, you must see to it that we receive prompt written notice . . . . [¶] You . . . must: (1) Immediately send us copies of any . . . legal papers received in connection with the claim or 'suit;' [¶] (2) Authorize us to obtain records and other information; [¶] (3) Cooperate with us in the investigation, settlement or defense of the claim or 'suit;' and [¶] (4) Assist us . . . in the enforcement of any right against any person . . . which may be liable to the insured because of injury or damage to which this insurance may also apply. . . ." (See *Maryland Casualty Ins. Co.* v. *Reeder* (1990) 221 Cal.App.3d 961, 968 [270 Cal.Rptr. 719].)

goal is coverage, which flies in the face of the insurer's desire to avoid its duty to indemnify. (*Id.* at pp. 364-365.) Since it is unavoidable that, in the course of investigating and preparing the insured's defense in the third party action, the insured's attorney will come upon information relevant to a coverage issue, it is impossible for the carrier's attorney to represent the insured (unless, of course, the insured consents) and the insured is entitled to independent counsel. (Civ. Code, § 2860, subds. (a), (b).)

When the insured is represented by independent counsel, ". . . it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action *except privileged materials relevant to coverage disputes*, and timely to inform and consult with the insurer on all matters relating to the action. *Any claim of privilege asserted is subject to in camera review in the . . . superior court.* Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party." (Civ. Code, § 2860, subd. (d), italics added; see also *United States Fidelity & Guaranty Co.* v. *Superior Court* (1988) 204 Cal.App.3d 1513, 1526-1527 [252 Cal.Rptr. 320] [the in camera review procedure exists to ensure the carrier's ability to obtain *non*privileged information from independent counsel].)

 Adoption of the *Waste Management* rule—that the cooperation clause abrogates the insured's expectation of confidentiality, thereby destroying the attorney-client privilege in the underlying action—would render Civil Code section 2860, subdivision (d), meaningless. This we decline to do.[3]

### E.

We are not the first court to refuse to adopt the views expressed in *Waste Mangement.*

---

[3]In Illinois, they don't let little things like conflicts of interest get in their way. As explained in *Waste Management* v. *Intern. Surplus Lines, supra,* 579 N.E.2d at page 329, since insureds and insurers "share a special relationship" because they "are in privity of contract," the insureds' attorney represents "both insureds and insurers in . . . the underlying litigations since insurers were ultimately liable for payment if the plaintiffs in the underlying action received either a favorable verdict or settlement. To deny discovery in this instance would be to disregard considerations of public policy which [favor] full disclosure by an insured to his insurer." (See also *In re Environmental Ins. Actions* (1992) 259 N.J.Super. 308 [612 A.2d 1338, 1342], limiting the duty to cooperate to situations where the "insurers actually conduct or pay for the defense of underlying claims and actions," but refusing to afford the insurers access to confidential defense information when they disavow coverage, a rule which (among other shortcomings) ignores the reservation of rights scenario—the carrier is paying defense costs but, at the same time, disputing coverage. However attractive these views may be to Rockwell's carriers, they are repugnant to the law of California.

In *Bituminous Cas. Corp.* v. *Tonka Corp.* (D.Minn. 1992) 140 F.R.D. 381, 386, a federal district court in Minnesota found "the reasoning of the Illinois Supreme Court to be fundamentally unsound" and "reject[ed] the conclusion that because an insured agrees to cooperate with the insurance company, in the event he is sued or otherwise makes a claim under the policy, that the insured has thereby forever contractually waived the attorney-client privilege. To hold that an insurance policy creates a contractual waiver of the attorney-client privilege, even when the insurance company later sues the insured contending the insured's claim is not covered by the policy, would completely eviscerate the attorney-client privilege. . . . Absent . . . an expressed intent [to have the cooperation clause operate as a waiver of the privilege,] there is nothing about an insurance contract or the relationship between an insurance company and its insured which compels a court to ignore the express statutory language of Minnesota's attorney-client privilege."

In *Remington Arms Co.* v. *Liberty Mut. Ins. Co.* (D.Del. 1992) 142 F.R.D. 408, 416-417, a federal district court in Delaware, applying Connecticut law, explicitly rejected the *Waste Management* rule: " 'Simply because an insured has a duty to cooperate with assigned defense counsel, the insured should not lose his rights to a defense protected by the attorney-client privilege.' . . . [¶] The Court concludes that the cooperation clause here does not imply a duty to produce documents protected by attorney-client privilege in a coverage dispute. [The carrier] does not seek these documents in order to cooperate on underlying litigation, but to succeed in [the insured's] coverage dispute against [the carrier]. Insurance law principles do not support imposing a duty to cooperate that applies regardless of coverage."

In *Pittston Co.* v. *Allianz Ins. Co.* (D.N.J. 1992) 143 F.R.D. 66, 72, a federal district court in New Jersey rejected the *Waste Management* rule and adopted the "better view" expressed in *Bituminous Cas. Corp.* v. *Tonka Corp., supra,* 140 F.R.D. at page 386, reasoning that a broadly worded cooperation clause should "not be interpreted to impose an intention by the insured to explicitly waive the attorney-client privilege or work product protection."

In *North River Ins.* v. *Philadelphia Reinsurance* (D.N.J. 1992) 797 F.Supp. 363, 369, another federal district court in New Jersey rejected the reasoning of *Waste Management,* holding that, "absent more explicit language, [an insured] does not through a cooperation clause give up wholesale its right to preserve the confidentiality of any consultation it may have with its attorney concerning the underlying claim and its coverage determination. Provided that the [insured] has been forthright in making available to its [insurer] all

factual knowledge or documentation in its possession relevant to the under-lying claim or the handling of that claim, it has satisfied its obligations under the cooperation clause. The [insurer] is not entitled under a cooperation clause to learn of any and all legal advice obtained by [an insured] with a 'reasonable expectation of confidentiality.' "

### F.

For all the reasons stated above, we refuse to read into the cooperation clause an unintended implied waiver of the attorney-client privilege.

## II.

### *The Common Interest Doctrine*

In their motion to compel, the carriers also claimed they share a "common interest" with Rockwell and thus come within the "joint client" exception to the attorney-client privilege. Although the referee and the trial court rejected this argument, the carriers have raised it in opposition to Rockwell's petition. Once again, we find ourselves declining to follow a rule announced in *Waste Management.*

After embracing the carriers' cooperation clause argument, the Illinois Supreme Court found their common interest argument irresistible and adopted it too. (*Waste Management* v. *Intern. Surplus Lines, supra,* 579 N.E.2d at p. 328.) Undisturbed by the fact that the carriers had not provided a defense or otherwise participated in the underlying actions, and undeterred by the fact that, as a result, no single attorney was acting jointly for two clients, the Illinois court held that, "under the common interest doctrine, when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. . . . This is especially so where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibity that those communications might play a role in a subsequent action between the insured and his insurer." (*Id.* at p. 328.)

The court went on: "Clearly, here both insurers and insureds had a common interest either in defeating or settling the claim against insureds in the [underlying] litigation. We believe that the communication by insureds with defense counsel is of a kind reasonably calculated to protect or to further those common interests. . . . [¶] . . . [W]e believe that the doctrine may properly be applied where the attorney, though neither retained by nor

in direct communication with the insurer, acts for the mutual benefit of both the insured and the insurer. . . . It is the commonality of interests which creates the exception, not the conduct of the litigation." (*Waste Management* v. *Intern. Surplus Lines, supra,* 579 N.E.2d at pp. 328-329.)

In California, the "joint client" or "common interest" exception applies only where "two or more clients have retained or consulted a lawyer upon a matter of common interest," in which event neither may claim the privilege in an action by one against the other. (Evid. Code, §§ 962, 953, subd. (a), 954, subd. (a).) Assuming the attorneys representing Rockwell in one or more of the underlying actions were selected by the carriers, those attorneys were not "retained or consulted" by the carriers within the meaning of Evidence Code section 962. To the contrary, the attorneys were retained to represent Rockwell and only Rockwell. (*Purdy* v. *Pacific Automobile Ins. Co.* (1984) 157 Cal.App.3d 59, 76 [203 Cal.Rptr. 524] [when a carrier is called upon to defend its insured, the attorney retained by the carrier for this purpose owes the same fiduciary duty to the insured as would have been owed had the insured made the selection of counsel and the attorney's primary duty is to further the best interests of the insured]; *In re Environmental Ins. Actions, supra,* 612 A.2d at p. 1342 [refusing to follow *Waste Management* because, under New Jersey law, the common interest exception only applies when both parties "have employed a lawyer to act for them in common"].)

Accordingly, the *Waste Management* common interest rule is inconsistent with California statutory law and cannot support the trial court's order. (Cf. *State Farm Fire & Casualty Co.* v. *Superior Court* (1988) 206 Cal.App.3d 1428, 1431-1432 [254 Cal.Rptr. 543]; see also *Glacier Gen. Assurance Co.* v. *Superior Court* (1979) 95 Cal.App.3d 836 [157 Cal.Rptr. 435].)[4]

---

[4]Rejection of *Waste Management*'s cooperation clause analysis seems to go hand-in-hand with rejection of its common interest rule. For example, in *Bituminous Cas. Corp.* v. *Tonka Corp., supra,* 140 F.R.D. at page 387, the court criticized *Waste Management*'s extension of the common interest exception because the "rationale which supports the 'common interest' exception to the attorney-client privilege simply doesn't apply if the attorney never represented the party seeking the allegedly privileged materials." And as the court put it in *North River Ins.* v. *Philadelphia Reinsurance, supra,* 797 F.Supp. at page 367, ". . . the common interest doctrine is completely unlashed from its moorings in traditional privilege law when it is held broadly to apply in contexts other than when there is dual representation. The Illinois Supreme Court went too far . . . ." (See also *Remington Arms Co.* v. *Liberty Mut. Ins. Co., supra,* 142 F.R.D. at pp. 417-418 [the common interest doctrine should not apply where the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by the insured and its carrier]; *Pittston Co.* v. *Allianz Ins. Co., supra,* 143 F.R.D. at pp. 68-71.)

### III.

#### The "In Issue" Doctrine

■ In their motion to compel, the carriers claimed they were entitled to all documents prepared by Rockwell's lawyers and their consultants in defending the underlying actions because, in this action, Rockwell has placed *in issue* its conduct which gave rise to the underlying claims. The referee and the trial court rejected this approach but, again, the carriers have raised it in opposition to Rockwell's petition. Believe it or not, the Illinois Supreme Court bought this one too, albeit finding the point "superfluous" in light of its acceptance of the insurers' other theories. (*Waste Management* v. *Intern. Surplus Lines, supra,* 579 N.E.2d at p. 327 ["We . . . agree that defense counsel's litigation files in the underlying cases are relevant and at issue in the present declaratory judgment action"].)[5]

The *in issue* doctrine creates an implied waiver of the privilege *only* when the client tenders an issue involving the substance or content of a protected communication, *not* where the privileged communication simply represents one of several forms of indirect evidence in a particular case. (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 606 [208 Cal.Rptr. 886, 691 P.2d 642].) For this reason, the doctrine has no application in a coverage action between an insured and its carrier where the issues turn on the underlying *facts* and the insured is not relying on the advice of counsel for any purpose. (*Aetna Casualty & Surety Co.* v. *Superior Court* (1984) 153 Cal.App.3d 467, 476-477 [200 Cal.Rptr. 471]; *Southern Cal. Gas Co.* v. *Public Utilities Com.* (1990) 50 Cal.3d 31, 45 [265 Cal.Rptr. 801, 784 P.2d 1373].)

There is *nothing* in the record before us to suggest that Rockwell has tendered any privileged communication or any issue which cannot be proved or disproved by other, more direct evidence. Accordingly, the *in issue* exception does not apply in this case. (See also *North River Ins.* v. *Philadelphia Reinsurance, supra,* 797 F.Supp. at p. 370 [the privilege is waived only when the party places in issue the *"contents"* of an attorney-client communication]; *Remington Arms Co.* v. *Liberty Mut. Ins. Co., supra,* 142 F.R.D. at pp. 411-416; *Pittston Co.* v. *Allianz Ins. Co., supra,* 143 F.R.D. at pp. 71-72.)[6]

---

[5]Some cases discuss an *"at* issue" doctrine, others an *"in* issue" doctrine. We think *in issue* is more descriptive.

[6]By generally rejecting all three theories (cooperation clause, common interest and *in issue*), we do not leave the carriers without a remedy. Under Civil Code section 2860, subdivision (d), in camera review is available to resolve disputes over particular documents. And, of course, if the insured places an otherwise privileged communication "in issue" during

IV.

*The Work Product Doctrine*

In the trial court, the carriers demanded access to certain consultants' reports, claiming they had not been prepared for the dominant purpose of transmitting information to an attorney (*Montebello Rose Co.* v. *Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 32 [173 Cal.Rptr. 856]) and that, in addition, the work product doctrine did not bar disclosure because the reports contained information not otherwise available to the carriers (*Williamson* v. *Superior Court* (1978) 21 Cal.3d 829, 838-839 [148 Cal.Rptr. 39, 582 P.2d 126]). The referee agreed with the carriers.

The trial court, in turn, refused to hear argument on this point. After determining that counsel was not "arguing something different . . . than [he] did to [Judge Saeta]," that Judge Saeta had "heard [him] out, and [the proposed order] is what [Judge Saeta] came to," and that "the same very argument you're making in front of me, you've made in front of Judge Saeta who had spent some 20 years on the superior court bench," the trial court heard briefly from counsel on the privilege issues but then refused to hear argument on the work product doctrine, challenging Rockwell to file a writ petition and "see what they do across the street."

■ As we held in *Marathon Nat. Bank* v. *Superior Court* (1993) 19 Cal.App.4th 1256, 1261 [24 Cal.Rptr.2d 40], a discovery referee's report is advisory, not determinative, and the trial court must independently consider the referee's findings and any objections submitted by the parties before accepting or rejecting the referee's recommendations. We also held that, in an exercise of its discretion, the trial court may consider these matters as the circumstances dictate, with or without a formal hearing—as long as the record demonstrates a considered and careful review not only of the referee's report, but also of the transcript of the proceedings held before the referee and the objections, responses and replies filed by the parties after submission of the referee's report.

In *Marathon Nat. Bank*, we were able to conclude with confidence that the trial court had reviewed the voluminous objections to the referee's report. In this case, we cannot reach a similar conclusion with regard to the work

---

the course of the coverage litigation (e.g., by a demand for reimbursement of money paid to settle a third party claim), the trial court can consider whether and to what extent the *in issue* doctrine applies to that particular issue.

product issues.[7] Taken together, the trial court's stated deference to the referee's greater experience and "gray hair," the trial court's failure to indicate whether it had read Rockwell's opposition to the referee's report, and the trial court's suggestion that the only way Rockwell could avoid the referee's conclusions would be by a petition to the Court of Appeal, leave us with no choice but to conclude that the trial court abdicated its judicial responsibility by simply entering an order on the referee's report as though it were a binding decision of the court itself. (*Aetna Life Ins. Co.* v. *Superior Court* (1986) 182 Cal.App.3d 431, 435-436 [227 Cal.Rptr. 460].)

For this reason, we do not reach the merits of Rockwell's claims concerning the consultants' reports and the application of the work product doctrine. On remand, the trial court will have to consider Rockwell's objections (and, of course, the carriers' response) and then make an informed decision about whether to accept the referee's recommendations.

## V.

### *The Sanction Order*

Rockwell was sanctioned for asking the referee to reconsider his rulings on the cooperation clause and work product issues. At this point, it should come as no surprise that we believe the sanction order was an abuse of discretion and that it must be vacated. We also believe the trial court's allocation of 100 percent of the referee's fees to Rockwell must be vacated, and the fees reallocated in light of our rulings. (*Tutor-Saliba-Perini Joint Venture* v. *Superior Court* (1991) 233 Cal.App.3d 736, 744-745 [285 Cal.Rptr. 1]; Code Civ. Proc., § 645.1.)

### DISPOSITION

Let a peremptory writ of mandate issue commanding the trial court to (1) vacate its order of February 4, 1994, in its entirety (including the sanction award); (2) enter new orders on Rockwell's privilege claims, denying the carriers' motion to compel production of any privileged document; (3) consider anew the referee's recommendations concerning the consultants' reports; and (4) reallocate the referee's fees in proportion to the legitimacy

---

[7]We are not overly concerned about the privilege issues because those are straight questions of law. On the work product doctrine, however, the referee made specific factual findings about when and why and in relation to what the reports were prepared.

of the claims asserted by the parties to this discovery dispute or as otherwise agreed by the parties.

Masterson, J., concurred. Spencer, P. J., concurred in the disposition only.

A petition for a rehearing was denied August 3, 1994, and the petition of real parties in interest for review by the Supreme Court was denied October 20, 1994.