**UNITED STATES of America, Plaintiff,**

v.

**A. Bruce ROZET, et al., Defendants.**

**No. C–97–1704 SC (JL).**

United States District Court,
N.D. California,
San Francisco Division.

Nov. 3, 1998.

Anne–Christine Massullo, United States Attorney's Office, San Francisco, CA, for Plaintiff.

Marcellus MacRae, Gibson, Dunn & Crutcher, San Francisco, CA, for Defendants.

## ORDER RE CLAIMS OF PRIVILEGE

LARSON, United States Magistrate Judge.

## INTRODUCTION

Defendants' Motion to Compel Production of Documents came on for hearing October 7, 1998. Appearing for Plaintiff was Assistant United States Attorney Anne–Christine Massullo. Appearing for Defendants was Marcellus MacRae of Gibson Dunn & Crutcher. The moving and opposing papers and the arguments of counsel having been considered, and good cause appearing.

IT IS HEREBY ORDERED that the motion is denied.

## FACTUAL BACKGROUND

This action arises from a series of agreements beginning in October 1990 which the United States contends formed a basis for a kickback and fraud scheme whereby certain of the Defendants diverted income from HUD-insured and funded projects through a fee splitting arrangement in violation of the HUD Regulatory Agreement. The Regulatory Agreement ("RA") is a standard contract which sets forth the terms and conditions under which the Secretary of HUD insures a loan being made to an ownership entity for the purchase of a housing project. One of the conditions is that the ownership entity provide management services for the projects which are satisfactory to the Secretary. The RA also contains a provision limiting the financial distributions from the project's income without prior written approval of the Secretary or the HUD Housing Commissioner.

The Agreement provided that $7 million was payable "in monthly installments solely from the thirty-three-and-one-third percent (33 1/3%) of the management fees paid to SMG" and ran for a term of five years, which was renewable for up to five, five-year terms. Defendants contend that under the Agreement, SMG agreed to purchase the management rights or the right to appoint a management agent (subject to HUD approval) for the 77 projects. The limited partnerships which owned the projects were not parties to the Agreement, and the Defendants contend that none of the limited partners received any of the proceeds from the Agreement. The parties do not dispute that HUD insured the loans for each of the 17 projects listed in the Complaint, as well as all 77 projects which were part of the Agreement, and that the entity that owned each project and HUD were parties to a Regulatory Agreement.

SMG made the first payment to NCA under the Agreement in November 1990. Shortly thereafter, a company named Insignia Management Group, L.P. ("Insignia") acquired SMG and became the successor in interest to SMG's rights and obligations under the Agreement. After Insignia acquired SMG it continued to make payments under the Agreement until May 1997. As of May 1997, the total payment made under this series of agreements was approximately $7.4 million.

Defendants contend that HUD was aware of the terms of the various agreements with SMG and Insignia, and that HUD officials acquiesced and approved these and other similar arrangements in this area. The United States disputes this contention, and further contends that it is irrelevant to this action since the Regulatory Agreements expressly require prior written approval, and that such approval would have been made by the respective HUD Field Offices, which it was not.

Defendants contend that none of the payments pursuant to the various agreements at issue violated the law, and that they did not violate the Anti–Kickback statute. Defendants further contend that they did not engage in any fraudulent scheme whatsoever, did not make any false statements of any kind, and particularly no false statements in connection with any claims against the Unit-

ed States. Finally, Defendants contend that they did not violate the RA.

## DELIBERATIVE PROCESS PRIVILEGE

The Defendants assert that the "privilege" upon which the plaintiff relies is the "deliberative process privilege" and that if in fact that is the correct basis for the claim of privilege, the Plaintiff has failed to meet the necessary conditions precedent to its invocation.

The deliberative process privilege is based on the perceived need to encourage candor within the decision-making process by protecting predecisional communications from disclosure. As stated in *U.S. v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974): "Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process." *Id.* at 705, 94 S.Ct. at 3106. This and other concerns were more fully expressed in the opinion of *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980), where the court said:

> "The privilege has a number of purposes: it serves to insure that subordinates within an agency ·will feel free to provide the decision maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."

*Id.* at 866.

▮ To effectuate efficiency within the Plaintiff's decision-making process, the courts therefore created the limited deliberative process privilege to protect those communications which are both deliberative and predecisional. *Coastal States*, 617 F.2d at 866; *see also N.L.R.B. v. Sears, Roebuck &*

*Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975).

▮ The privilege, however, is limited in several different ways. First, it may be overcome by a strong showing of need on the part of the party seeking discovery. *Izaak Walton League of America v. Marsh*, 655 F.2d 346, 370 (D.C.Cir.), cert. denied 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981); *Coastal States*, 617 F.2d at 868. Second, it belongs only to the Plaintiff; private parties can neither assert nor waive the privilege. *U.S. v. Reynolds*, 345 U.S. 1, 7, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953). Third, it applies only to that group of communications within the agency or department which can be characterized as part of a deliberative process leading to a decision. *Coastal States*, 617 F.2d at 866–68. Finally, it exists only when raised by a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. *Reynolds*, 345 U.S. at 7–8, 73 S.Ct. at 531–32.

## WHO MUST INVOKE THE PRIVILEGE

The requirement that the privilege be invoked only by the head of the department after actual personal consideration has been promulgated to insure that the privilege remains a narrow privilege which is not indiscriminately invoked. As stated in *Coastal Corp. v. Duncan*, 86 F.R.D. 514 (D.Del.1980): "Requiring the agency head to claim the privilege assures the court, which must make the ultimate decision, that executive privilege has not been lightly invoked by the agency, *Reynolds, supra,* and that in the considered judgment of the individual with an overall responsibility for the administration of the agency, the documents withheld are indeed thought to be privileged." *Id.* at 518. Thus, the courts have not permitted staff attorneys, especially those who are participating in the pending litigation, to assert the privilege on behalf of the agency. *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 43–44 (N.D.Tex.1981); *see also, Pierson v. U.S.*, 428 F.Supp. 384, 395 (D.Del.1977).

▮ In the case at bar, the deliberative process privilege has been invoked by Gail

W. Laster, General Counsel for the U.S. Department of Housing and Urban Development, who is, pursuant to an Order of Succession, acting as the Secretary of Housing and Urban Development. As acting head of the agency, she is precisely the appropriate person to invoke the privilege, and has full authority to do so.

She states in her declaration that production of documents such as those listed in Exhibit B, would:

> "[i]nhibit the free flow of ideas which leads to a thorough analysis of a decision to bring enforcement actions against participants in HUD programs. This is because these documents were generated during the investigation by the Office of Inspector General regarding the alleged kickback scheme engaged in by defendants and Insignia Corporation in Las Vegas, Nevada. The first categories are draft documents and electronic mail from HUD staff within the Office of Housing attempting to address the issue of fee-splitting. The second category consists of correspondence exchanged between the Office of Housing and the Office of Inspector General."

(Laster Declaration in Support of Plaintiff's Opposition).

There is, therefore, no valid issue as to the validity of Plaintiff's invocation of the deliberative process privilege. The substantive elements of the claim, are discussed below.

### ELEMENTS OF THE DELIBERATIVE PROCESS PRIVILEGE

#### Public Policy

■ The Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552(b), Exemption 5, permits withholding of "inter-agency or intra-agency memoranda or letters, which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption includes the "deliberative process privilege," the purpose of which "is to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Assembly of State of Cal. v. U.S. Dept. of Commerce,* 968 F.2d 916, 920 (9th Cir.1992). The deliberative process privilege protects the "decision making processes of ... agencies." *NLRB v. Sears,* 421 U.S. 132, 147, 95 S.Ct. 1504, 44 L.Ed.2d 29. The scope of the privilege extends beyond documents to protect the integrity of the deliberative process itself. *Dudman Communications Corp. v. Department of Air Force,* 815 F.2d 1565, 1568 (D.C.Cir.1987).

■ To qualify for Exemption 5 under the "deliberative process" privilege, a document must be both (1) "predecisional" or "antecedent to the adoption of agency policy" and (2) "deliberative" or "actually ... related to the process by which policies are formulated." *National Wildlife Federation v. U.S. Forest Service,* 861 F.2d 1114, 1117 (9th Cir.1988). The underlying purpose of this privilege is to "'protect [ ] the consultative functions of a plaintiff by maintaining the confidentiality of advisory opinions, recommendation's, and deliberations comprising part of a process by which plaintiff's decisions and policies are formulated.'" *Id.*

■ Finally, even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public. *Coastal States,* 617 F.2d 854, 866.

Retrospective evaluations of prior decisions must be segregated and released. *Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C.Cir.1975). The agency bears the burden of establishing "the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *Strang v. Collyer,* 710 F.Supp. 9, 11 (D.D.C.1989), aff'd. 899 F.2d 1268 (D.C.Cir.1990).

■ The deliberative process privilege does not apply to factual information that may be reasonably segregated from deliberative material. *See Bay Area Lawyers Alliance for Nuclear Arms Control v. Dept. of State,* 818 F.Supp. 1291, 1299 (N.D.Cal.1992). "Factual material that does not reveal the deliberative process is not protected by this exemption." *Paisley v. C.I.A.,* 712 F.2d 686, 698 (D.C.Cir.1983). *See American Petrole-*

*um Institute v. U.S. E.P.A.,* 846 F.Supp. 83, 90 (D.D.C.1994) (remanding to EPA to segregate factual from deliberative materials on parties' cross motions for summary judgment).

## ANALYSIS

■ This court's review of the documents submitted by Plaintiff in camera reveals that they are indeed both predecisional and deliberative. There are no segregable factual contents, and Acting Secretary Laster states that the documents were not presented to the public at a later date as representative of the agency's position. Nor is there any indication that these documents amount to an after-the-fact evaluation of a prior decision. Consequently, the documents fulfill the elements of the deliberative process privilege: the privilege has been invoked by the head of the agency; the documents are predecisional and deliberative; they do not contain segregable factual contents; they are not retrospective evaluations of prior decisions; and they have not been presented to the public as representing the agency's position. Therefore, the documents for which Plaintiff claims protections under the deliberative process privilege are indeed covered by that privilege.

## OPINION WORK PRODUCT

There are additional documents for which Plaintiff claims protection under the attorney-client privilege and the work product doctrine. Defendants, for the first time in their Reply, question Plaintiff's assertion of the work product doctrine. The Plaintiff, in its Opposition, observes correctly that Defendants had not challenged the Plaintiff's claim of attorney-client privilege and the work product doctrine, so the Plaintiff addressed only the Defendants' challenge to the deliberative process privilege.

■ Legal issues raised for the first time in reply briefs are waived. *Eberle v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir.1990). *Dilley v. Gunn,* 64 F.3d 1365, 1367 (9th Cir.1995). "Legal issues raised for the first time in reply briefs are waived." *U.S. v. Bentson,* 947 F.2d 1353, 1356 (9th Cir.1991),

cert. denied, 504 U.S. 958, 112 S.Ct. 2310, 119 L.Ed.2d 230 (1992).

■ These holdings apply to appeals, but the rationale applies as well in the case at bar: The question is whether the party challenging the claim of privilege has given its opponent proper notice and the opportunity to respond. In this case, Defendants misled the Plaintiff that they were contesting only the Plaintiff's claims of the deliberative process privilege. This is unfair, and improperly prejudices the Plaintiff.

Nevertheless, to avoid a request for reconsideration, this court will evaluate Defendants' argument.

■ Although opinion work product requires a stronger showing than ordinary work product, it is not absolutely immune from discovery. Rather, opinion work product is subject to discovery where the mental impressions of counsel are directly at issue. *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992) (opinion work product subject to discovery "when mental impressions are at issue in a case and the need for the material is compelling"); *Reavis v. Metropolitan Property and Liability Ins. Co.,* 117 F.R.D. 160, (S.D.Ca.1987) (courts allow exception to Rule 26(b)(3) where "mental impressions and opinions are directly at issue"); *Kockums Industries Ltd. v. Salem Equipment, Inc.,* 561 F.Supp. 168, 172–173 (D.Or.1983); "(While an attorney's private thoughts and impressions are certainly deserving of particular protection, the court has concluded ... that this privacy must take a back seat when advice of counsel is directly at issue in the case.")

Defendants in the case at bar invoke a right to obtain access to Plaintiff's attorney's opinion work product documents on the grounds both that Plaintiff's attorneys' opinion has been put at issue in this case and that Defendants' need for the documents is compelling:

"The district court will not conclude that defendants violated the RA if it also concludes that HUD has never interpreted its regulations as prohibiting fee sharing and sales of property management rights. Thus, in moving for summary adjudication

on these issues, the plaintiff has put HUD's mental impressions and conclusions at issue and has opened the door *at least* to information regarding (1) opinions, strategies, and theories of HUD and OIG counsel for penalizing the Insignia transaction, and (2) proposals and theories to address fee sharing and other practices described in the Complaint."

(Defendants' Reply at p. 20. Emphasis in original).

Has the Plaintiff put its attorney's advice "at issue" sufficiently to have waived attorney-client privilege or the work product doctrine?

■■■■■ Defendants base their contention on their interpretation of the Plaintiff's motion for summary adjudication, not on any reliance on the advice of counsel by the Plaintiff. There is no waiver "where the privileged communication simply represents one of several forms of indirect evidence in a particular case." *Rockwell International Corp. v. Superior Court,* 26 Cal.App.4th 1255, 1268, 32 Cal.Rptr.2d 153 (1994).

The district court (Hon. Samuel Conti) will indeed make a determination whether Defendants' conduct violated the RA, but this alone does not open the door to the Plaintiff's attorneys' opinions. Defendants may want this material. It would certainly help them with their case if they knew exactly what HUD's attorneys were thinking, but this is precisely the kind of unfair access that the attorney work product doctrine is intended to prevent.

## CONCLUSION

Plaintiff has invoked the deliberative process privilege. The appropriate agency official, the acting Secretary of the Department of Housing and Urban Development, has invoked the privilege. She has stated under oath that revelation of the withheld documents would reveal the agency's process by which it arrived at the decision to enforce its regulations against Defendants. The documents at issue were created prior to the agency's decision and were part of the give-and-take which led to the decision. Consequently, they are both deliberative and pre-

decisional, as required to satisfy the elements of the privilege. The documents contain no segregable factual information and were not ultimately presented to the public as representing the agency's position. Therefore, the documents do not fall into any of the categories in which the deliberative process privilege may be pierced.

Defendants have improperly challenged Plaintiff's assertion of the work-product doctrine, by raising it for the first time in their Reply. Nevertheless, the court has evaluated the challenge and found it to be fatally flawed. Plaintiff has not put its attorneys' advice at issue and therefore has not waived the protection. Defendants have failed as well to show a need for the documents substantial and unique enough to warrant piercing the protections afforded to opinion work product or non-opinion work product.

For all the above reasons, Defendants' motion to compel production of documents is denied.