GREAT AMERICAN SURPLUS LINES
INSURANCE COMPANY, a
corporation, Plaintiff,

v.

ACE OIL COMPANY, et al.,
Defendants.

ACE OIL COMPANY, INC., a corporation, Jack Crooks and Shirley Crooks, individuals, Counter–Claimants and Third Party Plaintiffs,

v.

GREAT AMERICAN SURPLUS LINES INSURANCE COMPANY, a corporation, Omaha Indemnity Company, a corporation, Frank B. Hall & Company of California, a corporation, Hoyt/Petersen & Company, a corporation, Michael P. Miller, The Home Insurance Company, a corporation, and The Planning Corporation, a corporation, Counter–Defendants and Third Party Defendants.

No. CIV S–86–0696 MLS.

United States District Court,
E.D. California.

March 2, 1988.

534

Michael A. Barns, Ray L. Wong, Ernest J. Beffel, Jr., Hancock, Rothert & Bunshoft, San Francisco, Cal., for plaintiff Great American Surplus Lines Ins. Co.

Turner & Sullivan, Sacramento, Cal., for defendant Ace Oil Co.

Richard Edson, Edson & LaPlante, Sacramento, Cal., for defendants, counterclaimants and third party plaintiffs Ace Oil Co., Inc., Jack Crooks and Shirley Crooks.

Jennifer A. Weston, Johnson, Hoffman & Paliero, Sacramento, Cal., for counter-defendant and third party defendant, Hoyt/Petersen & Co.

Jerome Varanini, Memering, Varanini, Hurst, Crowle & Trimble, Sacramento, Cal., for counter-defendant and third party defendant Frank B. Hall & Co. of California.

Martin Quinn, Rogers, Joseph, O'Donnell & Quinn, San Francisco, Cal., for counter-defendant and third party defendant Omaha Indem. Co.

## ORDER

JOHN F. MOULDS, United States Magistrate.

The motions for protective order of third party defendants Frank B. Hall & Company of California and Omaha Indemnity Corporation came on regularly for hearing June 11, 1987. After the hearing the disputed documents were submitted to the court for an *in camera* review and the parties filed further briefing. The matter is now submitted and ready for decision. Upon review of the motion and the documents in support and opposition, upon hearing the arguments of counsel and good cause appearing therefor, THE COURT FINDS AND ORDERS AS FOLLOWS:

Third party defendants Frank B. Hall & Company of California ("Frank B. Hall") and Omaha Indemnity Corporation ("Omaha Indemnity") bring the present motion for a protective order against defendants Ace Oil Co., Inc., Jack and Shirley Crooks ("Ace defendants"), and third party defendant Hoyt/Petersen and Company ("Hoyt/Petersen") because they seek the return of documents allegedly protected by the attorney-client privilege and the work product immunity but produced by non-party Constitution Reinsurance pursuant to a subpoena duces tecum from the Ace defendants. The alternate theories of privilege raised by movants require a review of the multiple pleadings in this case and the relationship among several non-parties.

The complaint alleges that in January of 1985 two fires broke out on the business premises of defendants, resulting in petroleum pollution of the site. At the time of the fires defendants had a comprehensive general liability insurance policy with Omaha Indemnity and an environmental impairment liability policy with plaintiff Great American Surplus Lines Insurance Company ("Great American"). The liability policy issued by Omaha Indemnity was reinsured by Constitution Reinsurance.[1]

---

1. California Insurance Code § 620 defines reinsurance as a "contract ... by which an insurer procures a third person to insure him against loss or liability by reason of such original insurance." The fundamental purpose of reinsurance is to permit an insurer to reduce the reserve requirement imposed by California law thereby allowing it to spread risk over a large number of policies, reduce the amount of reserves required to maintain its business, and increase profitability. *American Re–Insurance Co. v. Insurance Com'n.*, 527 F.Supp. 444, 452 (C.D.Cal.1981). A reinsurance contract is presumed to be a contract of indemnity for the benefit of the insurance company. The original insured has no direct or third party beneficiary interest in the contract. *Ascherman v. General Reinsurance Corporation*, 183 Cal.App.3d 307, 228 Cal.Rptr. 1 (1986). Claims made by the original insured are paid by the original insurer, who in turn is paid by the reinsurer. Reinsur-

Claims were made on both policies through Frank B. Hall, managing general agent for Omaha Indemnity and agent for Great American.[2] Without informing Omaha Indemnity but acting in accordance with its duties as general managing agent, Frank B. Hall engaged the services of attorney Culbreth to investigate the fires and advise on coverage. Frank B. Hall did not keep Omaha Indemnity informed of its on-going negotiations with the Ace defendants but it did keep Constitutional Reinsurance notified of progress on the claims. The documents subject to the instant motion for a protective order were sent to Constitution Reinsurance in response to its general request for information on the claims.

The disputed documents consist of sixteen letters, some sent as transmittal letters, from attorney Culbreth to Frank B. Hall regarding the defendants' claims for coverage and an additional letter from attorney Culbreth to his expert consultant at Owen Geotechnical.[3] On February 4, 1987, the Ace defendants requested production of various documents from Frank B. Hall. Frank B. Hall objected to production of the disputed documents on March 12, 1987. The Ace defendants then requested similar documents from Constitution Reinsurance who produced the disputed documents

among others. On May 8, 1987, Frank B. Hall received copies of the documents from Constitution Reinsurance. After reviewing the 175 pages of material, counsel for Frank B. Hall discovered that privileged documents had been disclosed. Counsel were then contacted and informed of the privileged nature of the documents. Counsel for Frank B. Hall contacted counsel for the Ace defendants again on May 26, 1987 in an effort to reach an interim protective order. Frank B. Hall filed the instant motion for an order shortening time and for a protective order on May 26, 1987.[4]

At the time of production Omaha Indemnity was not aware that Constitution Reinsurance possessed the documents and did not authorize their release. Constitution Reinsurance did not advise Frank B. Hall or Omaha Indemnity that it was going to disclose the Culbreth documents to the Ace defendants. The vice-president of Constitution Reinsurance has stated that he was not aware of any reason to withhold them. Bret Culbreth was not contacted about the impending production of his correspondence and did not authorize disclosure.

The motion for a protective order asserts two theories of confidentiality under the attorney-client privilege. Frank B. Hall ar-

---

ers typically reinsure only part of the original insurance contract, *Excess & Casualty Reinsurance Ass'n v. Insurance Com'r.,* 656 F.2d 491, 492 (9th Cir.1981). The reinsurance contract between Omaha Indemnity and Constitution Reinsurance reinsures fifty-one percent of all losses incurred by Omaha Indemnity in connection with the oil jobbers program arranged by Frank B. Hall. Ninety-seven and five-tenths percent of all risks assumed by Omaha Indemnity under the oil jobbers program were reinsured with various reinsurers.

**2.** Great American's complaint states that although it acted in good faith by paying invoices presented for fire-related spillage, promptly investigating further "deep contamination" claims by the insureds, and attempting to negotiate a non-waiver agreement for payment of expenses under investigation, defendants breached their implied covenant of good faith and fair dealing by making unreasonable, premature claims to coverage, negotiating for the advance payment waiver agreement in bad faith, and threatening a bad faith lawsuit if plaintiff did not comply with defendants' unreasonable demands for payment.

The Ace defendants counterclaimed against Great American and cross-claimed against Omaha Indemnity, Frank B. Hall, Hoyt/Petersen and its employee Michael Miller for a declaratory judgment allocating liability on the policies among insurers and for compensatory and punitive damages for bad faith refusal to provide coverage under the insurance policies and various other state law claims. Further third party claims have been filed by Hoyt/Petersen and Omaha Indemnity.

**3.** Movants originally claimed protection for a letter among counsel discussing joint legal strategies (documents ## 87–89), but they did not include these documents in the list of privileged documents submitted to the court on February 3, 1988. These documents are no longer at issue.

**4.** This court granted the application to shorten time and imposed an interim protective order prohibiting any further use or dissemination of the documents pending resolution of the motion.

gues additionally that the documents are privileged under the work product immunity. The court will address the attorney-client privilege first.

## I. THE ATTORNEY–CLIENT PRIVILEGE

As a preliminary matter the court notes that, since subject matter jurisdiction in this case rests on diversity, issues of privilege are decided in accordance with California law. Fed.R.Evid. 501; *Samuelson v. Susen*, 576 F.2d 546 (3rd Cir.1978). The attorney-client privilege clearly qualifies as a privilege covered by Fed.R.Evid. 501, so the court applies state law as the controlling rule of law.

■■■ Movants bear the burden of demonstrating the existence of the attorney-client privilege. *National Steel Products Company v. Superior Court*, 164 Cal.App. 3d 476, 210 Cal.Rptr. 535 (1985). Plaintiff has demonstrated the existence of an attorney-client relationship between Frank B. Hall and attorney Culbreth; respondents have not disputed this attorney-client relationship. Once the relationship has been established, communications between attorney and client are presumed to have been made in confidence, and the opponent of the privilege carries the burden of proving that the communication was not confidential. Cal.Evid.Code § 917; *North v. Superior Court*, 8 Cal.3d 301, 310, 104 Cal.Rptr. 833, 502 P.2d 1305 (1972).

California Evidence Code § 952 further defines "confidential communications between client and lawyer" as "information transmitted between a client and his lawyer in the course of that relationship" which "includes a legal opinion formed and the advice given by the lawyer...." Respondents assert that portions of the disputed documents are not privileged without elucidating why the attorney-client privilege

does not apply. After an *in camera* review the court concludes that letters between Culbreth and Frank B. Hall qualify as attorney-client communications pursuant to Cal.Evid.Code § 952.[5]

The complete resolution of the attorney-client privilege claims before the court depends upon the proper characterization of the relationships among Omaha Indemnity, its managing agent Frank B. Hall and its reinsurance agent Constitution Reinsurance. Frank B. Hall and Omaha Indemnity argue that either they were joint holders of the attorney-client privilege with Constitution Reinsurance and therefore may claim the privilege even though Constitution Reinsurance has waived its claim of privilege or Constitution Reinsurance was not a holder of the attorney-client privilege and therefore could not have waived the privilege held by Frank B. Hall and Omaha Indemnity.

The first argument rests on the characterization of Frank B. Hall, Omaha Indemnity and Constitution Reinsurance as joint holders of the attorney-client privilege. California Evidence Code § 954 states that only a "holder" of the attorney-client privilege may refuse to disclose or prevent another from disclosing confidential communications between client and lawyer, while section 953 defines "holder of the privilege" as the client, the client's guardian or conservator, the client's personal representative if the client is dead, or the client's successor in interest.[6] Client is defined as a person who directly or through an authorized representative consults a lawyer for the purpose of retaining the lawyer or securing legal advice from him in his professional capacity. Cal.Evid.Code § 951.

As evidenced by the Managing General Agents Contract between Omaha Indemnity and Frank B. Hall, Frank B. Hall was authorized to conduct the business of Oma-

---

**5.** These include documents ## 5, 11–12, 23–27, 34–36, 41–43, 51–52, 59–61, 78–85, 92–93, 108, and 112. Respondent's objections are overruled as to documents ## 5, 12, 24, 26–27, 34–36, 41, 43, 52, 60–61, 80–82, 84, 92, 108, and 112.

**6.** This is one point at which the court's reliance upon state law is significant. California law

differs markedly from federal law in that under California law only a client may waive the attorney-client privilege, thereby eliminating any possibility of waiver through inadvertent production by the attorney. *See Weil v. Investment/Indicators, Research and Management*, 647 F.2d 18 (9th Cir.1981).

ha Indemnity in connection with the oil jobbers insurance and to take such actions as were reasonably necessary to handle a claim including engaging counsel to represent its interest. Lunby Declaration at 3:13–15. Frank B. Hall was obliged by the agent contract to keep Omaha Indemnity apprised of all serious disputes arising out of the adjustment of any loss or threatened litigation in connection with a claim, but did not inform Omaha Indemnity of Culbreth's engagement or the Ace claims on the policy aside from routine accounting reports showing amounts paid on the claim among others. Because Frank B. Hall acted within the terms of the agency contract in hiring Culbreth to advise about the claim, Frank B. Hall's failure to apprise Omaha Indemnity that he hired an attorney for them does not preclude this court from concluding that Culbreth's clients included *both* Frank B. Hall and Omaha Indemnity. Cal.Evid.Code § 951 includes within the definition of "client" an entity which seeks legal advice through an authorized representative. The statute anticipates the type of relationship illustrated by Frank B. Hall and Omaha Indemnity. *American Mutual Liability Ins. Co. v. Superior Court,* 38 Cal.App.3d 579, 113 Cal.Rptr. 561 (1974) (insured and insurer joint holders of privilege where attorney engaged by insurer to defend insured). Although Omaha Indemnity joined in the consultation with attorney Culbreth only through its agent, this did not alter the relationship of Frank B. Hall and Omaha Indemnity as one whose "primary, overlapping and common interest is the speedy and successful resolution of the claim and the litigation." *American Mutual Liability Ins. Co.,* 38 Cal.App.3d at 592, 113 Cal.Rptr. 561.

The Ace defendants argue without authority that Omaha Indemnity and Frank B. Hall cannot be joint holders of the privilege because they are not separate and distinct entities but rather one and the same with only one attorney-client privilege which was waived when Frank B. Hall sent the disputed documents to Constitution Reinsurance. The Ace defendants support this contention with assertions about the parties' respective duties and responsibilities under the agency contract, but the contractual division of duties indicates to this court the separate and distinct nature of the principle and the agent.

The agency relationship between Omaha Indemnity and Frank B. Hall establishes Frank B. Hall's authority to create confidential communications and leads to the conclusion that they are joint holders of the attorney-client privilege, but the key link in resolving the issue of waiver is the relation between Frank B. Hall and Constitution Reinsurance. Since Constitution Reinsurance received the documents from Frank B. Hall, Constitution Reinsurance's participation in the attorney-client relationship determines the analytical framework for the motion before the court.

■ Movants concede that, if Constitution Reinsurance is a joint holder of the attorney-client privilege, it waived its claim of privilege when it produced the documents. In that event, however, movants still contend that they may still assert their privilege pursuant to Cal.Evid.Code § 912(b). Frank B. Hall declares the existence of an attorney-client relationship with Constitution Reinsurance without demonstrating how such a relationship was created or maintained, while Omaha Indemnity argues the position as an alternative to its first position that Constitution Reinsurance merely shared an interest with Omaha Indemnity in the Ace claims. These complexities need not be pursued further, however, because Constitution Reinsurance is not a joint holder of the privilege. The facts before the court do not support the finding that Constitution Reinsurance consulted with Culbreth in any way, either directly or indirectly. Thus Constitution Reinsurance is not a client within the meaning of Cal.Evid.Code § 951.

When Constitution Reinsurance disclosed the disputed documents, it did not hold the attorney-client privilege. Since under California law only a holder of the privilege may waive it, Cal.Evid.Code §§ 954 and 953, Constitution Reinsurance could not have waived the attorney-client privilege held by Frank B. Hall and Omaha Reinsurance. Respondents contend, however, that

if Constitution Reinsurance did not waive the privilege, Frank B. Hall waived the privilege by sending the documents to Constitution Reinsurance because the disclosure was not reasonably necessary.

■ California Evidence Code § 912 states that a disclosure in confidence of a communication protected by the attorney-client privilege does not waive the privilege if the disclosure is "reasonably necessary for the accomplishment of the purpose for which the lawyer ... was consulted...." This provision has been held to justify disclosure of documents to business partners without resulting in a waiver. In *Cooke v. Superior Ct. of Los Angeles County*, 83 Cal.App.3d 582, 147 Cal.Rptr. 915 (1978), Mrs. Cooke sought to set aside an order requiring her to return and refrain from using documents containing attorney-client communications between her husband and his attorneys, where the documents were sent to her by eavesdropping family servant who lived with the husband after the couple's separation. Mrs. Cooke argued that the lower court erred in finding the documents confidential because they had been disclosed to members of the husband's family and business partners. The court held that the husband had a right to disclose privileged communications to his business partners since the lawsuit directly involved the business with which they were associated. *Cooke*, 147 Cal.Rptr. at 919.

In *Insurance Company of North America v. Superior Court*, 108 Cal.App.3d 758, 166 Cal.Rptr. 880 (1980), the attorney-client privilege was not waived by the presence of a parent corporation's vice-president and a member of its reserve committee at a legal briefing session run by an attorney engaged by a wholly-owned subsidiary. The court found that, since the vice-president played the role of legal advisor and the Reserve Committee member advised the subsidiary on sound accounting procedures and assured the parent corporation that the subsidiary was in sound financial health, their presence furthered the interests of the subsidiary under Cal.Evid.Code § 952. The court also found that the presence of these persons was reasonably necessary for the purpose for which the attorney was hired. The court noted that the key concept was the third party's need to know the disclosed information and stated that the provisions were intended to be given a comprehensive interpretation as illustrated in the *Cooke* case.[7] Respondent Hoyt/Petersen attempts to distinguish the case by stating that it was limited to wholly-owned subsidiaries and affiliates, but this distinction ignores passages where the court stated that the privilege would not be waived in analogous situations outside the corporate field. Hoyt/Petersen also alludes to the court's statement that, absent some conflict of interest or evidence of antagonism among entities, disclosure of confidential communications remained privileged. Constitution Reinsurance is not a party to this action, and there is no evidence presently before this court which would lead to the conclusion that Frank B. Hall and Constitution Reinsurance had adverse interests at the time of the disclosures.

Respondents argue that Constitution Reinsurance had no interest in Culbreth's communications regarding the extent of coverage under the Omaha Indemnity policy. Respondents state that Constitution Reinsurance had no role in the claims process. Respondents fail to take account of the holding of the *Cooke* case which recognized a parent corporation's right to assure itself that proper accounting procedures were followed. Constitution Reinsurance reinsured the greatest proportion of the policy at issue here. Good business practices would lead Constitution Reinsurance to peruse documents indicating the extent

---

7. The Ace defendants incorrectly cite *In re Edward D.*, 61 Cal.App.3d 10, 132 Cal.Rptr. 100 (1976) for the proposition that Cal.Evid.Code § 912(d) should be interpreted to protect only those disclosures which are required to aid the attorney in his accomplishment of the legal task for which he was hired. Respondents' quotation from the dissenting opinion in this case does not persuade the court that the majority opinions in *Insurance Company of North America* and *Cooke* erroneously protected communications made to business associates because they had a need to remain apprised of the progress of litigation and negotiation.

of exposure determined by Frank B. Hall because Constitution Reinsurance would be ultimately responsible for a substantial portion of any amount paid on the policy. A finding that disclosure was not reasonably necessary would require undue interference with communications appropriately characterized as confidential by movants.[8]

■ This court has found that the documents are subject to the attorney-client privilege and that the privilege was not waived by Constitution Reinsurance's delivery of the documents. Respondents' final argument in opposition to the attorney-client privilege rests on the timeliness of the motion. Respondents argue that movants have not shown that they lacked an opportunity to move for a protective order before Constitution Reinsurance responded to the subpoena duces tecum requesting the disputed documents. Although the parties did not fully address the issue, the record before the court does not suggest that the motion should be denied on this basis. Counsel began negotiations for the return of the documents upon their receipt after production, and they sought an order shortening time so that the issue could be decided. There is no evidence of prejudice from the manner in which counsel sought the protective order. The court finds that the motion was sought in a timely fashion.

■ This court has found that most of the disputed documents warrant protection under the attorney-client privilege. Movants also claim protection under the attorney-client privilege for document # 44, a letter written by attorney Culbreth to an expert retained in connection with the Ace Oil insurance claims. The attorney-client privilege does not apply to this document because communications between an expert and an attorney are not privileged unless they concern information which emanates directly from the client. *See, e.g., Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co.,* 68 F.R.D. 397, 404 (E.D. Va.1975). Movants argue in the alterna-

tive that the document should be protected under the work product immunity.

## II. THE WORK PRODUCT IMMUNITY

■ The law governing work product immunity is found in Rule 26(b)(3) of the Federal Rules of Civil Procedure, not in Federal Rule of Evidence 501. It has been held in this circuit and others that the work product immunity involves procedural considerations and not substantive privilege, so a federal court applies federal law to resolve this issue. *Connolly Data Systems, Inc. v. Victor Technologies, Inc.,* 114 F.R.D. 89 (S.D.Cal.1987); *Railroad Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.) Inc.,* 97 F.R.D. 37 (E.D. N.Y.1983), *aff'd,* 779 F.2d 38 (1985).

Respondents do not dispute that the document qualifies for protection as work product material. Respondents have failed to make a showing of substantial need and undue hardship required for disclosure. Fed.R.Civ.P. 26(b)(3).

In view of the foregoing discussion, the court finds that document # 44 is protected as work product in accordance with federal law, and that documents ## 5, 11–12, 23–27, 34–36, 41–43, 51–52, 59–61, 78–85, 92–93, 108, and 112 are protected by the attorney-client privilege under state law. Movants' motion for a protective order is granted in its entirety. All copies of the disputed documents shall be delivered to movants within seven days from the date of this order. All parties and their counsel and agents shall refrain from making any reference to the documents or disclosing or summarizing in any manner any portion of the documents.

---

8. Since Frank B. Hall did not waive the attorney-client privilege when it sent documents to Constitution Reinsurance, the court need not consider respondents' argument that as the agent for Omaha Indemnity Frank B. Hall waived the privilege for Omaha Indemnity.