**FIRST PACIFIC NETWORKS, INC., a Delaware corporation, Plaintiff,**

v.

**ATLANTIC MUTUAL INSURANCE COMPANY, and Does 1 through 10, inclusive, Defendants.**

No. C–94–2851 DLJ.

United States District Court, N.D. California.

Oct. 24, 1995.

Dale Fredericks, Ana Goodwin, Sheppard, Mullin, Richter & Hampton, San Francisco, CA, for Plaintiff, First Pacific Networks.

Michael Johnson, Larson & Burnham, Oakland, CA, for Defendant, Atlantic Mutual Ins. Co.

Lawrence G. Lossing, Lossing & Elston, San Francisco, CA, for Third Party St. Paul Fire & Marine Ins. Co.

## OPINION AND ORDER RE THE DISCOVERABILITY OF COMMUNICATIONS BETWEEN FIRST PACIFIC NETWORKS AND ST. PAUL

BRAZIL, United States Magistrate Judge.

In late July of this year Atlantic Mutual (Atlantic) filed a motion to compel First Pacific Networks (FPN) to produce several different kinds of documents and information. On September 6, 1995, after considering written and oral submissions from the parties, as well as from St. Paul Fire and Marine Insurance Company (St. Paul), I ruled on most of the matters in dispute. I deferred ruling, however, on that part of Atlantic's motion that sought discovery of documents "reflecting or constituting communications between First Pacific Networks, or any of its agents ... and St. Paul or any of its agents ... relating in any way to *Bass v. First Pacific Networks*." Atlantic's Request for Production No. 2, served March 3, 1995, attached as Ex. A to the Declaration of Michael K. Johnson in Support of Def.'s Motion to Compel filed July 26, 1995. Because the parties' disputes related to this specific request appeared to raise more difficult questions, I gave counsel time to submit additional briefs and exhibits directed to issues I articulated in an order filed September 11, 1995. Having received and reviewed the

parties' extensive additional submissions, and having considered at some length the pertinent authorities, I hereby GRANT IN PART and DENY IN PART Atlantic's motion to compel the documents covered by request for production No. 2.

Because this court's subject matter jurisdiction over this case is based on diversity of citizenship, California law governs disposition of issues about the attorney-client privilege. Fed.R.Evid. 501 (West 1995). Federal law governs disposition of issues about the work product doctrine. *Great American Surplus Lines, Inc. v. Ace Oil Co.*, 120 F.R.D. 533, 539 (E.D.Cal.1988); *Connolly Data Systems, Inc. v. Victor Technologies, Inc.*, 114 F.R.D. 89 (S.D.Cal.1987); *Railroad Salvage of Connecticut, Inc. v. Japan Freight Consolidators (U.S.A.), Inc.*, 97 F.R.D. 37 (E.D.N.Y.1983).

 At the outset, I repeat a ruling I made in early September: confidential communications between FPN and its *Cumis* counsel,[1] Sheppard, Mullin, Richter & Hampton (Sheppard, Mullin), that were made for the purpose of securing legal advice/services, and that were not disclosed to St. Paul or to any other third party, are protected from discovery by the attorney client privilege. *Assurance Co. of America v. Haven*, 32 Cal. App.4th at 88–90, 38 Cal.Rptr.2d 25; *Rockwell Int'l Corp. v. Superior Court*, 26 Cal. App.4th 1255, 1264, 32 Cal.Rptr.2d 153 (1994), *reh'g denied* (that court strongly implied that California Civil Code section 2860

preserves the attorney-client privilege between the insured and its *Cumis* counsel against invasions by the carrier); *see also Spectra–Physics, Inc. v. Superior Court*, 198 Cal.App.3d 1487, 1494, 244 Cal.Rptr. 258 (1988) (depositions of attorneys in bad faith litigation are limited to unprivileged matters). Absent a showing of waiver, such documents need not be produced.

FPN does not contend that any of the remaining documents are not discoverable because they are irrelevant. Since all the remaining documents are relevant, at least within the meaning of Rule 26 of the Federal Rules of Civil Procedure, and since no persuasive argument has been advanced that discovery of these documents would offend the proportionality or other requirements of Federal Rules of Civil Procedure 26(b) or (g), the motion to compel must be granted unless FPN can establish that some or all of the documents are protected by a privilege or by the work-product doctrine.

Earlier in the history of this dispute it appeared that FPN was taking the position that section 2860(d) of the California Civil Code created, or served as an independent source of, a separate privilege (i.e., separate from the attorney-client privilege). In its most recent submission, however, FPN expressly states that it "does not contend that section 2860 itself creates a privilege." FPN's Letter Brief filed October 4, 1995 at n. 5. Given this concession, FPN must pro-

---

1. Under the seminal opinion in *San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.*, 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984), an insured has a right to be provided independent counsel by the carrier when a conflict of interest exists between the insured and the carrier. California courts have upheld the validity of the *Cumis* decision, and the substantive elements of *Cumis* have been codified and clarified in California Civil Code section 2860. *U.S. Fidelity and Guar. Co. v. Superior Court*, 204 Cal.App.3d 1513, 1520–25, 252 Cal.Rptr. 320 (1988), *reh'g denied* (court refused to overturn *Cumis*); *Assurance Co. of America v. Haven*, 32 Cal.App.4th 78, 81, 38 Cal.Rptr.2d 25 (1995), *review denied* (section 2860 codified and clarified the *Cumis* decision). The most relevant subsections of the statute read:

(d) When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action except privileged materials relevant to cover-

age disputes, and timely to inform and consult with the insurer on all matters relating to the action. Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the superior court. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

\* \* \* \* \* \*

(f) Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured. Nothing in this section shall relieve the insured of his or her duty to cooperate with the insurer under the terms of the insurance contract.

Cal.Civ.Code § 2860(d), (f) (Deering 1995).

duce the documents in question unless it can establish that they are protected either by the attorney-client privilege or by the work product doctrine.

## THE ATTORNEY–CLIENT PRIVILEGE

■ FPN advances the sweeping argument that *all* of the communications (relevant to the *Bass* litigation) between it or its lawyers and St. Paul or its lawyers are protected under California law by the attorney-client privilege. No California court has endorsed this view, acceptance of which would extend the reach of established privilege doctrine considerably. *Cf. Rockwell*, 26 Cal. App.4th at 1264, 32 Cal.Rptr.2d 153 (indicating that it would contravene the purpose of California Civil Code § 2860 to permit carriers to use the cooperation clause in their policies as a sufficient basis to gain access to otherwise privileged communications between their insured and *Cumis* counsel). A federal court should undertake such an extension only when it is very clearly supported by principles or rationales that California courts already have endorsed. There being no clear support in existing California law for such an extension, I must decline to find that the attorney-client privilege protects all confidential communications [2] between an insured or its *Cumis* counsel, on the one hand, and a carrier who is paying for a defense under a reservation of rights, on the other. *Cf. Assurance*, 32 Cal.App.4th at 90, 38 Cal. Rptr.2d 25 (no attorney-client relationship exists between *Cumis* counsel and the carrier).

■ In support of its contention that the attorney-client privilege applies to communications between FPN or its *Cumis* counsel and St. Paul (FPN's carrier), FPN relies primarily on section 952 of the California Evidence Code and cases construing that section. This provision of the Evidence Code states, in pertinent part:

... "confidential communication between client and lawyer" means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further *the interest of the client in the consultation* or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of *the purpose for which the lawyer is consulted....*

Cal.Evid.Code § 952 (Deering 1995) (emphasis added).

The key difficulty with FPN's reliance on section 952 is that every California case that has indicated that under this provision the privilege extends to communications between an insured and its carrier involved a situation in which the carrier had accepted responsibility both for defense and indemnification *without a reservation of rights*—and *so* had hired *one lawyer who simultaneously represented both the insured and the carrier.* See, e.g., *Soltani–Rastegar v. Superior Court*, 208 Cal.App.3d 424, 256 Cal.Rptr. 255 (1989); *Travelers Ins. Companies v. Superior Court*, 143 Cal.App.3d 436, 191 Cal.Rptr. 871 (1983); *Gene Compton's Corp. v. Superior Court*, 205 Cal.App.2d 365, 23 Cal.Rptr. 250 (1962). Thus there is a difference between those situations and the case at bar that is fundamental for purposes of privilege analysis. In the situations where California courts have found section 952 applicable, there has been no conflict of interest between the carrier who is paying for the lawyer and the insured who is being represented. In the case at bar, in sharp contrast, St. Paul agreed to pay for FPN's defense in the underlying action only under a reservation of rights; in other words, St. Paul made it clear that it reserved the right to deny coverage as to both indemnity and defense if facts developed, as they might well have, under which its policy would offer no coverage to FPN.

In this classic *Cumis* situation, the carrier is in effect announcing that there is sufficient

---

**2.** Confidential communications between an insured and its *Cumis* counsel that were privileged at the time they originally were made and that are later shared with the carrier that is paying for *Cumis* counsel enjoy a special statutory status under California Civil Code section 2860. I address the protection enjoyed by this special, much more limited category of communications later in this Opinion and Order.

tension between the carrier's interests and the interests of the insured to trigger the rights of the insured that are codified in section 2860 of the California Civil Code. In short, there is such a conflict of interest between carrier and insured that the carrier must pay a lawyer, selected by the insured, whose *only* "client" (i.e., the only person to whom the standard lawyer-client obligations run) is the insured. *Cumis*, 162 Cal.App.3d at 375, 208 Cal.Rptr. 494. While this *Cumis* counsel has some obligations to the carrier, those obligations are limited and are set forth in section 2860. *Assurance*, 32 Cal. App.4th at 90, 38 Cal.Rptr.2d 25 (*Cumis* counsel need only disclose, inform, consult and cooperate with the carrier with regard to unprivileged information to satisfy the duties under section 2860(d)). These obligations are strictly of an informational character, and arise only because of the unique three-cornered arrangement that carriers create when they agree to defend only under a reservation of rights. *Id.* at 89, 38 Cal.Rptr.2d 25. Most significantly, these clearly are *not* the obligations of a lawyer to a client. *Id.* at 90, 38 Cal.Rptr.2d 25. They could not be—because one lawyer cannot simultaneously represent two parties between whose interests there is such an obvious and significant ongoing tension. *Id.*; *Rockwell*, 26 Cal.App.4th at 1263–64, 32 Cal.Rptr.2d 153; *Cumis*, 162 Cal.App.3d at 364–67, 375, 208 Cal.Rptr. 494; *Executive Aviation, Inc. v. National Ins. Underwriters*, 16 Cal.App.3d 799, 809–10, 94 Cal.Rptr. 347 (1971).

It is precisely because of that tension (the significant potential conflict of interest) that the attorney-client privilege cannot extend to all communications between the insured or its *Cumis* counsel, on the one hand, and, on the other, the carrier that has reserved its rights. The presence of that tension is fundamentally inconsistent with a basic requirement of all attorney-client relationships: the requirement that the client have a reasonably based expectation that the communications will not be used against the client. *Assurance*, 32 Cal.App.4th at 87–88, 38 Cal.Rptr.2d 25; *Cumis*, 162 Cal.App.3d at 366, 208 Cal. Rptr. 494;[3] *see also Employers Ins. of Wausau v. Albert D. Seeno Const. Co.*, 692 F.Supp. 1150, 1158 (N.D.Cal.1988).

■ At least after St. Paul reserved its rights, FPN simply was not in a confidential relationship with its carrier. While St. Paul might have had fiduciary obligations to FPN that could have cabined St. Paul's freedom to disclose communications from FPN, we have been presented no evidence that FPN gave any thought to such matters when it communicated with St. Paul. Much more significantly, FPN had to know that there was a real possibility that St. Paul would use information contained in the subject communications *against* FPN in subsequent coverage disputes. It is that knowledge (that its communications might well be turned against it) that is fundamentally at odds with the notion of a relationship of confidence. *Cf. Griffith v. Davis*, 161 F.R.D. 687 (C.D.Cal.1995) (an expectation of confidentiality was unreasonable where a defendant understood that statements he made in part to promote common interests with other parties might well be used for purposes other than a common defense).

■ Nor can it be persuasively argued that section 2860 of the Civil Code creates the kind of 'relationship of confidence' that is necessary for the attorney-client privilege to attach. That statute arises out of a recognition of the *tensions* in the relationship between insured and carrier (when the carrier

---

**3.** The *Cumis* court quoted with approval the following passage from a federal court opinion:

[T]he basis for the rule against representing conflicting interests is broader than the basis for the attorney-client evidentiary privilege. The evidentiary privilege and the ethical duty not to disclose confidences both arise from the need to encourage clients to disclose all possibly pertinent information to their attorneys, and both protect only the confidential information disclosed. The duty not to represent conflicting interests, on the other hand, is an outgrowth of the attorney-client relationship itself, which is confidential, or fiduciary, in a broader sense. Not only do clients at times disclose confidential information to their attorneys; they also repose confidence in them. The privilege is bottomed only on the first of these attributes, the conflicting-interests rule, on both.

*Cumis*, 162 Cal.App.3d at 366 n. 5, 208 Cal.Rptr. 494 (quoting *E.F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 393–94 (S.D.Tex.1985)) (citations omitted).

reserves its rights) and imposes a limited duty to share certain unprivileged information with the carrier. *Assurance*, 32 Cal. App.4th at 83–85, 38 Cal.Rptr.2d 25. Section 2860 clearly does *not* create a duty to share with the carrier communications between FPN and its *Cumis* counsel that are privileged. On the contrary, under that statute, and the cases construing it, the insured and its independent counsel retain fully the right to communicate between themselves in private—and to shield those communications from the carrier. *Id.* at 86–88, 38 Cal. Rptr.2d 25; *Rockwell*, 26 Cal.App.4th at 1263, 32 Cal.Rptr.2d 153 ("... California's legislative declaration that where, as here, the insured·is entitled to independent counsel and to a relationship with that counsel free from the fear of disclosure of privileged communications."); *Cumis*, 162 Cal.App.3d at 366 n. 5, 208 Cal.Rptr. 494; *see also Employers*, 692 F.Supp. at 1157–58.

We also reject the suggestion that FPN needed to communicate with St. Paul *in order to secure legal advice.* While FPN had a statutory and contractual obligation to provide certain information to St. Paul, it was not necessary to provide that information in order for FPN to receive legal advice from its *Cumis* counsel. Receipt of that advice was dependent only on communications directly between *Cumis* counsel and FPN—and was independent of communications by the insured to its carrier. FPN appears to equate, mistakenly, communications that are necessary in order to preserve an entitlement to have the carrier pay for *Cumis* counsel with communications that are necessary to generate legal services for the insured. The kinds of communications (of information about the status of the underlying litigation) to the carrier that must be made as a predicate for an entitlement to payment are quite different from the kinds of communications that the insured may deem appropriate to make to its independent lawyer in order to secure reliable legal advice. *Assurance*, 32 Cal.App.4th at 88, 38 Cal.Rptr.2d 25.

■ Thus it is *not* accurate to say, in the language of section 952, that St. Paul ever was "present to further the interest of the client [FPN] *in the consultation* [with FPN's

independent *Cumis* counsel]," or that St. Paul was a person "to whom disclosure was reasonably necessary for the transmission of the information or the accomplishment of *the purpose for which the lawyer [Cumis* counsel] *is consulted....*" Cal.Evid.Code § 952 (emphasis added). Simply stated, it was not necessary that St. Paul be present or privy to the communications between FPN and its independent *Cumis* counsel in order for that counsel to achieve the ends for which he was being consulted, namely, to provide FPN with reliable legal advice and effective representation in the underlying lawsuit. As Atlantic points out, under California law, the insured and its *Cumis* counsel retain full control over the defense of the underlying action—in other words, they control the character of the legal representation and, as a matter of law, they control the character of that representation independent of the views of the carrier who has reserved its rights to deny coverage. *Assurance*, 32 Cal.App.4th at 84, 38 Cal.Rptr.2d 25; *Cumis*, 162 Cal. App.3d at 369, 375, 208 Cal.Rptr. 494.

■ Finally, we are not persuaded that the "joint client" or the "joint defense" or the "common interest" doctrines would apply in the situation at bar. Clearly the "joint client" doctrine that is codified in section 962 of the California Evidence Code does not apply here. For that section to apply, each of two parties must be a client of the same attorney. Cal.Evid.Code § 962 (Deering 1995); *Glacier General Assurance Co.,* 95 Cal.App.3d 836, 839–40, 157 Cal.Rptr. 435 (1979). Here, St. Paul and FPN each had its own lawyer. As a matter of law, FPN could be Sheppard, Mullin's only client in these matters. *Rockwell*, 26 Cal.App.4th at 1267, 32 Cal.Rptr.2d 153 (the *Cumis* counsel is not "retained or consulted" by the carrier to qualify for "joint client" or "common interest" exception under California Evidence Code section 962); *Assurance*, 32 Cal. App.4th at 84, 38 Cal.Rptr.2d 25. After it reserved its right to deny coverage, St. Paul clearly could not consider itself a client of its insured's independent *Cumis* counsel. Cal. Civ.Code § 2860(a) (Deering 1995) (conflict of interest between insured and carrier requires independent counsel); *see also Hous-*

*ton General Ins. Co. v. Superior Court,* 108 Cal.App.3d 958, 166 Cal.Rptr. 904 (1980).

██ Nor do we believe that California courts would conclude that communications between FPN or its *Cumis* counsel and St. Paul should qualify for protection under the "joint defense" or "common interest" doctrines.[4] These doctrines have not been recognized statutorily in California, and case law discussion of them is sparse. *See Raytheon Co. v. Superior Court,* 208 Cal.App.3d 683, 688, 256 Cal.Rptr. 425 (1989) (*citing* Comment, *Applying the Attorney–Client and Work Product Privileges to Allied Party Exchange of Information in California,* 36 UCLA L.Rev. 151 (1988)). Rather than use these doctrines as a basis for effecting a general expansion of the attorney-client privilege, California courts appear to resolve disputes that arguably implicate these notions by relying either generally on "waiver" analysis or specifically on interpretation of one concept that is common to both sections 912 and 952 of the California Evidence Code. *See Raytheon,* 208 Cal.App.3d at 687–689, 256 Cal.Rptr. 425; *Insurance Co. of North America v. Superior Court,* 108 Cal.App.3d 758, 166 Cal.Rptr. 880 (1980). That concept is that the privilege can continue to attach to communications that are disclosed in confidence to third persons *when that disclosure is reasonably necessary to achieve the ends for which the lawyer is being consulted.* We discussed application of Evidence Code section 952 to the case at bar earlier in this opinion, concluding that it could not be construed to extend the privilege to the communications in issue here.

Regardless of the conceptual framework used, we do not believe that either California or federal courts would conclude that all the communications between FPN and St. Paul that were related to the *Bass* litigation would qualify for protection under a joint defense or a common interest theory. Key predicates for invocation of those doctrines are missing here.

Since there is no direct action statute in California, FPN and St. Paul were not joint defendants in the underlying action and could not rationally have expected to be. Thus courts would not conclude that the communications between them were part of an "on-going and joint effort to set up a common defense strategy" against a common litigation opponent (either actual or anticipated). *See Griffith,* 161 F.R.D. at 696; *also compare Eisenberg v. Gagnon,* 766 F.2d 770, 787–88 (3d Cir.1985) (that court held privileged communications between parties whose interests largely coincided).

While the carrier and its insured clearly had some interests in common, the crucial fact is that the purpose that drove the making of the communications in issue here was not to facilitate or enhance the rendering of legal services to FPN. *Cf. Griffith,* 161 F.R.D. at 696. As we already have pointed out, these communications were *not* necessary for FPN to secure the legal representation for which it retained the Sheppard, Mullin firm. For the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter. *See, e.g., SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508 (D.Conn.1976); *cf. North River Ins. Co. v. Philadelphia Reinsurance Corp.,* 797 F.Supp. 363 (D.N.J.1992); *but see LaSalle Nat. Trust, N.A. v. Schaffner,* 1993 WL 105422 (N.D.Ill.1993) (relying on *Waste Management Inc. v. Int'l Surplus Lines Ins. Co.,* 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991), an opinion expressly rejected by the California Court of Appeal in *Rockwell,* 26 Cal.App.4th at 1261–64, 32 Cal.Rptr.2d 153). Moreover, we note again that it was clearly foreseeable by FPN that St. Paul might use the communications in issue here against FPN in litigation over coverage. Thus there are a host of considerations that support a holding that the joint defense or common interest doctrines cannot be used to attach the attorney-client privilege general-

---

4. For a discussion of these doctrines in federal court opinions, *see generally* Paul R. Rice, *Attorney–Client Privilege in the United States* §§ 4:35–

4:36 (1993). A discussion of how state courts have treated these doctrines is anticipated soon in a substantial supplement to this treatise.

ly[5] to communications between FPN or Sheppard, Mullin and St. Paul.

While not necessary to disposition of its motion, we turn briefly at this juncture to Atlantic's separate argument that, under Civil Code section 2860, it acquired rights to information from FPN and FPN's *Cumis* counsel when it (Atlantic) agreed, with a reservation of rights, to participate in funding the defense of James K. Gibby against the defamation cause of action in the underlying suit. Atlantic's argument seems to be that agreeing to defend Gibby was the legal equivalent, at least for purposes of section 2860, of agreeing to defend FPN itself because (1) Gibby was the president and chief executive officer of FPN, (2) the policy under which Gibby acquired his right to a defense was issued to FPN, and (3) Gibby could be entitled to a defense under that policy only for conduct in which he engaged in his capacity as an officer of FPN.

It is not clear how persuasive this line of argument is. The only cause of action as to which Atlantic agreed, temporarily and with a reservation of rights, to provide a defense was the defamation cause of action. And the defamation cause of action, at least during the period that Atlantic had agreed to participate in funding Gibby's defense, sounded only against Gibby, not FPN. While Atlantic may well have acquired rights to information from Gibby relevant to the defamation cause of action, it does not necessarily follow that Atlantic also acquired rights to information from FPN. And even if Atlantic did a acquire right to information from FPN, the scope of that right would be limited to matters relevant to the defamation claim (which, again, sounded at the time only against Gibby).

Given the other, independent bases on which I have resolved the issues raised by Atlantic's motion, I need not determine how California courts would resolve the dispute about whether and to what extent Atlantic acquired informational rights from FPN. Moreover, as I make clear later in this Opinion and Order, any entitlement to informa-

tion that Atlantic may have had under section 2860 was limited, by the terms of that statute, to *unprivileged* communications. Thus, a holding that Atlantic acquired rights under section 2860 would not increase the categories or kinds of documents to which Atlantic has access under this Opinion and Order.

## INAPPLICABILITY OF THE WORK PRODUCT DOCTRINE

 FPN also has advanced, with less apparent vigor, the argument that the communications between it or its *Cumis* counsel and St. Paul are protected by the work product doctrine. Even in diversity cases the content of that doctrine is determined by federal law in federal courts. *Great American*, 120 F.R.D. 533, 539; *Connolly Data Systems*, 114 F.R.D. 89; *Railroad Salvage*, 97 F.R.D. 37. Under federal law, the work product doctrine only attaches to documents prepared in anticipation of litigation or for use in trial. *Hickman v. Taylor*, 329 U.S. 495, 511–12, 67 S.Ct. 385, 393–394, 91 L.Ed. 451 (1947); Fed.R.Civ.P. 26(b)(3). The documents in issue here were not prepared for litigation—they were prepared in order to satisfy a statutory and contractual obligation to provide information to the carrier and/or to try to persuade the carrier to provide full coverage. When it is clear that documents would have been prepared independent of any anticipation of use in litigation (i.e., because some other purpose or obligation was sufficient to cause them to be prepared), no work product protection can attach. *See, e.g., Fox v. California Sierra Financial Services*, 120 F.R.D. 520, 528–29 (N.D.Cal.1988) (that court held securities and tax opinion letters, which regulations required defendant to provide in connection with a public offering, were not created in "anticipation of litigation"); Fed.R.Civ.P. 26(b)(3).

 Moreover, to the extent that the communications were made to try to persuade the carrier to provide coverage, they clearly were being shared with a potential

---

**5.** We analyze separately the status under section 2860 of confidential communications between FPN and Sheppard, Mullin that were privileged at the time they were made and then later were shared with St. Paul.

adversary—an act sufficient to waive work product protection, had any such protection ever attached in the first place. *See Samuels v. Mitchell*, 155 F.R.D. 195, 201 (N.D.Cal. 1994) (work product protection is waived when an "attorney cannot reasonably expect to limit the future use of the otherwise protected material") (*quoting In re Doe*, 662 F.2d 1073 (4th Cir.1981)).

## THE SHARING OF EARLIER COMMUNICATIONS THAT WERE PRIVILEGED AT THE TIME THEY ORIGINALLY WERE MADE

It has been suggested, again without substantial apparent conviction, that the documents in issue (those shared by FPN or Sheppard, Mullin with St. Paul) might contain or describe communications that were made earlier just between FPN and Sheppard, Mullin and that clearly were privileged at the time they were made. To the extent that earlier-made, clearly privileged (at the time) communications are included in the documents in issue, they require separate analytical treatment.

Atlantic urges this court to hold that Atlantic is entitled to access to any such communications that were shared with St. Paul—at least during the period that Atlantic had agreed, with a reservation of rights, to participate in funding the defense of the defamation claim against Gibby. I respectfully decline to so hold. As a preliminary matter, I note that it is not clear that Atlantic acquired any informational rights vis-a-vis *FPN* .(as opposed to Gibby) under California Civil Code section 2860, as discussed above. But even if Atlantic did acquire some rights, vis-a-vis FPN, those rights would be limited to information relevant to the defamation claim against Gibby and, most significantly, would not reach *privileged* communications between FPN and its *Cumis* counsel. *See* Cal.Civ. Code § 2860(d); *Assurance*, 32 Cal.App.4th at 90, 38 Cal.Rptr.2d 25; *Rockwell*, 26 Cal. App.4th at 1263–64, 32 Cal.Rptr.2d 153.

Moreover, while one could argue that it is unfair or unwise, as a matter of public policy, to permit an insured to decide to share some otherwise privileged communications with one carrier but not with another, I do not feel free, sitting in a federal court, to depart from the unambiguous language in the controlling California statute. I certainly have no business making public policy for the State of California. And while it is possible that the drafters and enactors of section 2860 failed to anticipate the situation I face here, the sparse legislative history of section 2860 makes it virtually impossible to identify the range of circumstances contemplated by those legislators.

More importantly, when the pertinent language in the statute is clear, a federal court should depart from that language only when the basis for doing so is both compelling and supported by policies or principles that some legitimate law-generating authority in California has endorsed. I am aware of *no* such support in California authorities for the departure that Atlantic urges. *Cf. Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220, 238, 178 Cal.Rptr. 343, 636 P.2d 32 (1988) (carrier's denial of coverage extinguished insured's contractual duty to keep carrier informed of litigation).

For these reasons, I feel constrained to hold that the pertinent part of section 2860(d) means what it says. That pertinent part reads:

Any information disclosed [to the carrier pursuant to the obligation imposed by the first sentence of subsection (d) ] by the insured or by independent counsel *is not a waiver* of the privilege *as to any other party*.

Cal.Civ.Code § 2860(d) (emphasis added).

Recently, California courts of appeal have vigorously defended the sanctity of the attorney-client privilege between the insured and its *Cumis* counsel. *Assurance*, 32 Cal. App.4th at 86–88, 38 Cal.Rptr.2d 25; *Rockwell*, 26 Cal.App.4th at 1264, 32 Cal.Rptr.2d 153; and *Cumis*, 162 Cal.App.3d at 366, 208 Cal.Rptr. 494. Under these appellate decisions, a carrier has no ability to penetrate privileged communications between insured and its counsel (regardless of whether such communications relate to coverage)—and an insured is under no duty to share any such communications with a carrier that is funding a defense under a reservation of rights.

These recent decisions reinforce the legitimacy of an insured's expectation that the insured would retain the power to determine whether (or to what extent) to share any otherwise privileged communications with its carrier—and that sharing any such communications would not constitute a waiver of the privilege "as to *any* other party." Cal.Civ. Code § 2860(d) (emphasis added).

The extent of the insured's power to control disclosure of some privileged communications, without risking waiver, is most visible in the fact that California law seems to permit an insured to pick and choose which of the insured's otherwise privileged communications it will share with a carrier funding a defense under a reservation of rights—and to do such picking and choosing without waiving the right to prevent its carrier from having access to other privileged communications—even communications on the same subjects. *See* Cal.Civ.Code § 2860(d). The fact that California law appears to give insureds such broad power (in *Cumis* situations) over which privileged communications (if any) to share with one carrier lends some support to an inference that California law would permit an insured to share some privileged communications with one carrier without thereby waiving the insured's power to decide whether or not to share those same communications with another carrier.

Given the clarity of the language in section 2860(d), and the breadth of control that California law gives an insured (in a *Cumis* situation) over disclosure to its carrier of otherwise privileged communications, I decline to hold that FPN waived its attorney-client privilege if it shared with St. Paul communications between FPN and its *Cumis* counsel that were privileged at the time they were made. I similarly decline to rule that FPN must disclose to Atlantic any such otherwise privileged, earlier-made communications that were included or described in the otherwise unprivileged documents that FPN or its *Cumis* counsel shared with St. Paul.

### SUMMARY OF RULINGS

For the reasons set forth in detail above, the court hereby GRANTS Atlantic's motion to compel production of documents that FPN or its *Cumis* counsel shared with or sent to St. Paul, EXCEPT that FPN and its *Cumis* counsel need not produce those portions of documents that include or describe any communications earlier made between FPN and Sheppard, Mullin that qualified for protection under FPN's attorney-client privilege at the time the communications were made and whose confidentiality has otherwise been reserved.

I hereby ORDER FPN and Sheppard, Mullin to identify, by November 1, 1995, in a separately generated privilege log, any communications between FPN or Sheppard, Mullin, on the one hand, and St. Paul, on the other, that contain or describe earlier-made, privileged communications between FPN and Sheppard, Mullin. FPN may redact (withhold from production) any portions of documents that contain or describe such communications.

FPN and Sheppard, Mullin shall complete the production of the documents made discoverable by this Order by no later than November 1, 1995.

IT IS SO REPORTED and RECOMMENDED.