Billings, Thomas P., J.
This action for legal malpractice arises out of defendants Bums & Levinson, LLP, Michael MacClary, and Francis Perkins’s (the “B&L defendants”) representation of plaintiff RFF Family Partnership, LP (“RFF”) in connection with RFF’s commercial loan to Link Development, LLC (“Link”). The *503 B&L defendants have filed a motion to dismiss pursuant to MassR.Civ.P. 12(b)(9) and 12(b)(6).[1] For the following reasons, the motion is DENIED.
BACKGROUND
For the purposes of this motion, the allegations of the complaint are taken as true, and all reasonable inferences therefrom are drawn in the plaintiffs favor. See, e.g. Productora e Importadora de Papel, S.A. de C.V. v. Fleming, 376 Mass. 826, 833-35 (1978); Marshall v. Stratus Pharms., Inc., 51 Mass.App.Ct. 667, 670-71 (2001).
RFF is a limited partnership formed under the laws of California with its principal place of business in Santa Monica, California. Burns & Levinson, LP (“B&L”) is a Massachusetts limited liability partnership. Michael MacClary (“MacClary”) and Francis Perkins (“Perkins”) are partners in B&L. Certain Underwriters at Lloyd’s London (“Lloyd’s London”) issued a professional malpractice policy to the B&L defendants.
By foreclosure deed dated August 2, 2005, Link Development, LLC (“Link”) took title to approximately 23 acres abutting Route 1 in Saugus, Massachusetts. The property consisted of four parcels, three unregistered and one registered. On August 14, 2006, Desert Pine LLC (“Desert Pine”) recorded a $2.2 million mortgage on the three unregistered parcels. On October 2, 2006, a private lender, BD Lending Trust (“BD”) recorded a $700,000 mortgage on the property.[2] On October 10, 2006, an entity related to Desert Pine, Desert Palm LLC (“Desert Palm”), recorded a $2 million mortgage on the registered parcel of the property.
In April 2007, RFF retained B&L to provide legal advice in connection with a short term loan to Link that RFF intended to be secured by a first mortgage lien on the property. To perfect RFF’s first mortgage lien, B&L was to search title to the property, identify senior liens of record, and report such liens to RFF. Having done the title search and found the liens, B&L prepared two subordination agreements, intended to subordinate the Desert Pine and Desert Palm mortgages to RFF’s mortgage. However, according to the complaint, B&L failed to disclose the BD mortgage to RFF, and failed to take any action to subordinate or discharge it. Nor did B&L discover and disclose to RFF that Jeffrey Karll (“Karll”), Link’s purported principal, may not have had the authority to execute loan documents on Link’s behalf.
RFF funded a $1.4 million loan to Link on October 12, 2007 (the “loan transaction”) in reliance on Karll’s supposed authority to bind Link and on its belief that it would have a first lien position. After the closing, B&L recorded the subordination agreement for the Desert Pine mortgage, but failed to record the subordination agreement for the Desert Palm mortgage, because the registry rejected it. B&L did not inform RFF that the agreement had been rejected. Thus, RFF was unaware of the BD mortgage and unaware that the Desert Palm mortgage was still senior. These superior liens totaled $2.7 million. RFF paid B&L approximately $61,565 to complete the loan transaction.
Link promptly defaulted on RFF’s loan. B&L continued to represent RFF in connection with the default and, ultimately, a foreclosure. In connection with the foreclosure, the B&L defendants again reviewed the title and identified as issues the outstanding BD and Desert Palm mortgages, but still did not pass on these concerns to RFF.
A foreclosure sale was scheduled for March 26, 2010.[3] The day before the sale, Russell & Associates (“Russell”), who had been assigned the Desert Palm mortgage, filed an action in the Land Court against RFF and others, captioned Russell & Assocs., LLC v. Robert V. Wallace, Jr. et al., Land Court Docket No. 10 MISC 425681 (the “Land Court action”), seeking to enjoin foreclosure and establish the priority of the Desert Palm mortgage on the registered parcel.[4] Russell based the action on B&L’s failure to record the subordination agreement. The B&L defendants represented to RFF that the Land Court action was of no concern, assigned lawyers to defend the action, and billed RFF $20,000 for their time.
The Land Court denied Russell’s emergency motion to enjoin foreclosure, and the sale went ahead as scheduled. RFF was the high bidder, with the B&L defendants bidding $2.5 million on its behalf. Due to what RFF alleges was B&L’s miscalculation of the balance due on the Link loan, this amount exceeded the payoff value of the loan. B&L billed RFF $70,000 for its services with respect to the foreclosure. Represented by the B&L defendants to sell the property to a third party, RFF subsequently entered into a Purchase and Sale Agreement dated Januaiy 2011. Negotiations with the third-party purchaser continued until March 2011, with B&L continuing to represent RFF.
Russell’s Land Court action is still pending, with Russell pressing its claim that its lien was superior to RFF’s and so survived the foreclosure. Soon after it was filed, RFF retained Prince Lobel iye LLP (“Prince Lobel") to replace B&L as its counsel in that action. On March 2, 2011, Prince Lobel gave B&L notice of RFF’s claim for malpractice in connection with the above events, and demanded that B&L indemnify it against any resulting loss. B&L by letter dated March 8, 2011, denied the allegations. Notwithstanding B&L’s knowledge that Prince Lobel represented RFF in connection with the matter, MacClaiy contacted Robert Freedman (“Freedman”), RFF’s principal, to discuss the malpractice claims. MacClaiy informed Freedman that B&L continued to represent RFF regarding the prospective sale of the property, and that Freedman needed to sign a document stating that RFF had not engaged Prince Lobel to file any action against the B&L defendants. The complaint asserts that MacClary did not advise *504 Freedman to consult independent counsel, nor did he inform Freedman of B&L’s failure to identify existing liens, record the subordination agreement, or calculate the payoff properly.
“As a result of B&L’s failure to acknowledge its malpractice or mitigate the damages sustained by RFF,” on June 1, 2011, RFF (appearing by Prince Lobel) filed a complaint in United States District Court for the District of Massachusetts against Link, Karll, Robert V. Wallace, as Trustee of the BD Lending Trust, and Russell, captioned RFF Family Partnership, LLP v. Link Development, LLC et al., C.A. No. 1:11-cv-10968-NMG (the “Federal action”). The Federal action sought to void the BD mortgage and to collect the remaining balance on its loan from both Link and Karll.
Link counterclaimed, seeking, inter alia, to recover funds allegedly due it as a result of B&L’s miscalculation of the payoff amount. The District Court approved Link’s Memorandum of lis pendens. Although the original offer to purchase the property was withdrawn, RFF has received a new offer that requires it to deliver clear title, which the lis pendens and senior encumbrances prevent it from doing.
By letter to B&L’s counsel dated August 2, 2012, RFF provided “Supplemental Notice to Bums & Levinson LLP’s Malpractice Insurer,” demanding payment under c. 93A and c. 176D.[5] The complaint asserts that Lloyd’s London failed to acknowledge RFF’s claims and failed to investigate or make an offer of settlement. RFF has incurred costs related to the maintenance of the property and costs related to the various lawsuits to which it is a party. It estimates that it paid B&L $130,000 and has received additional bills in the amount of $85,000.
RFF filed its complaint on June 13, 2012, and filed an Amended Complaint as of right on October 19, 2012. The Amended Complaint asserts claims for breach of contract against B&L (Count I); legal malpractice against B&L, MacClaiy, and Perkins (Count II); negligent misrepresentation against B&L, MacClaiy, and Perkins (Counts III and IV); intentional misrepresentation against B&L, MacClaiy, and Perkins (Counts v. and VI); violation of G.L.c. 93A §§2, 11 against B&L, MacClaiy, and Perkins (Count VII); and violation of G.L.c. 93A, §§2, 11 against Lloyd’s London (Count VIII).[6]
DISCUSSION
A. Mass.R.Civ.P. 12(b)(9).
The B&L defendants first, but mistakenly, argue that the complaint must be dismissed under Mass.R.Civ.P. 12(b)(9) because the rule against claim splitting bars this action because its subject matter is identical to that in the Federal action. As one authority has summarized the precept of Mass.R.Civ.P. 12(b)(9):
On any given claim, plaintiff may only pursue defendant in one action. Courts do not favor the shotgun approach to litigation; nor the splitting of claims, a condition Rule 12(b)(9) seeks to prevent. Thus the latter action is subject to dismissal on motion, if the parties and issues are identical. . .
J. Smith & H. Zobel, Rules Practice, 6 Mass. Practice Series §12.17 at 217 (Second Ed. 2006) (emphasis supplied; footnotes omitted).[7]
The Land Court case and the federal case seek to adjudicate priority of title; this case concerns a claim of legal malpractice. The other cases involve, collectively, all parties interested in the title dispute but not B&L, its partners, or its insurer; in this case, the only parties are RFF, the B&L defendants, and Lloyds. Obviously, neither the issues nor the parties are identical as between this case and those. No claims have been split, and Rule 12(b)(9) does not apply.[8]
B. Mass.R.Civ.P. 12(b)(6).
To withstand a motion to dismiss under Mass.R.Civ.P. 12(b)(6), a plaintiffs complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plain tiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006).[9]
The motion to dismiss fares no better under Rule 12(b)(6) than it did under Rule 12(b)(9). The defendants’ remaining arguments[10] for dismissal are as follows.
1. Damages
“To prevail on a claim of negligence by an attorney, a client must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained; that the client has incurred a loss; and that the attorney’s negligence is the proximate cause of the loss.” Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass.App.Ct. 107, 111 (1987). The B&L defendants contend that the loss element is missing in this case.
The Amended Complaint alleges, however, that due to the B&L defendants’ malpractice, what ought to have been a first mortgage securing its $1.4 million loan is in fact — so far as record title is concerned — in third position, behind $2.7 million in prior liens. RFF received an offer to purchase the property, but it was withdrawn; a second offer is contingent — as, one would think, virtually any offer would be — on deliveiy of clear title. This is damage enough. See Republic Oil Corp. v. Danziger, 9 Mass.App.Ct. 858 (1980) (if attor *505 ney is negligent in certifying title when there is an encumbrance on the property, attorney may be liable for amount owner had to pay to remove lien to avoid foreclosure, plus costs associated with commencement of foreclosure proceedings).
Also, RFF is litigating the title issues on two fronts, and it does not take much imagination to conclude that the damages that it alleges, in each count, that it “has incurred, and will continue to incur” include substantial legal bills and expenses in those cases, perhaps even in excess of the $130,000 it has paid B&L. Even if it succeeds in federal court and in the Land Court, the B&L defendants, if they were at fault, will be liable for what RFF has had to pay to set the matter right. See Shimer v. Foley, Hoag & Eliot, 59 Mass.App.Ct. 302, 314-15 (2003); Girardi v. Gabriel, 38 Mass.App.Ct. 553, 560-61 (1995); R. Mallen & J. Smith, Legal Malpractice, §21:6 (2012 Ed.) (“attorneys fees and expenses are recoverable if litigation occurred because of the attorney’s negligence, whether they occurred in the prosecution or defense of an action”). Finally, RFF plausibly alleged that there are substantial carrying costs on the property, which it would have been able to sell were it not for the title issues. The complaint adequately alleges damages.
2. Failure to Disclose Malpractice
Among the allegations supporting Counts VI (Intentional Misrepresentation) and VII (Chapter 93A) is that the B&L defendants had a duty to, but did not, “disclose that they committed malpractice.” (Amended Complaint, 19189-90, 100.) The defendants argue that they were under no such duty.
The first problem with the argument is that this is not the only alleged misrepresentation alleged in Counts VI and VII; even if the defendants are right on the law, therefore, it would not result in dismissal of a count.
It is far from clear, moreover, that the defendants are right on the law.
The relation of attorney and client is highly fiduciaiy in its nature. The attorney owes his client a duty of full and fair disclosure of facts material to the client’s interests.
Hendrickson v. Sears, 365 Mass. 83, 90 (1974); see Mass.R.Prof.Conduct (SJC Rule 3:07), Rule 1.4. Given this “expansive obligation of disclosure . . . potential liability under c. 93A for non-disclosure (or misleadingly complete disclosure) of material facts susceptible of the attorney’s knowledge or subject to her control— even, arguably, including the failure to disclose the fact of the attorney’s prior malpractice — -is a distinct possibility.” Hon. G. Jacobs & Hon. K. Lawrence, Professional Malpractice, 51 Mass. Practice Series §17.4 at 471-72 (2007).
Although no reported Massachusetts case has squarely confronted the question of tort liability for a lawyer’s concealment of his own mistake, this hardly seems a stretch: surely, a lawyer’s discovery that he or his firm has mishandled a matter in a way that is likely to damage the client’s interests meets any reasonable definition of materiality, and must be disclosed. Such liability has been imposed on medical doctors, at least where their concealment results in damage to the patient (including missing the statute of limitations for a malpractice action against the physician). Chace v. Curran, 71 Mass.App.Ct. 258, 263-64 (2008) (holding that complaint asserting fraud and breach of fiduciary duty by medical providers who failed to disclose to patient their own malpractice “sets forth viable claims”).
Similar conduct by an attorney is undeniably an ethical violation, both in Massachusetts, In re Shaughnessy, 442 Mass. 1012 (2004) (imposing discipline on attorney who actively concealed his failure to file action before expiration of statute of limitations); Matter of Keefe, 7 Mass. Att’y Discipline Rep. 138, 139-40 (1991) (same), and elsewhere.[11] It also appears that a majority of jurisdictions that have faced the question of tort liability for an attorney’s concealment of a significant mistake have found such claims viable, whether presented as straightforward legal malpractice or as a breach of fiduciaiy duty.[12]
That the confession of error runs contrary to self-interest and human nature, yet may be required, is simply a fact of fiduciary life. “Unflinching loyalty to their interests is the duty of every attorney to his clients.” Berman v. Coakley, 243 Mass. 348, 355 (1923); see Mass.R.Prof.Conduct (SJC Rule 3:07), Rule 1.7, comment 6 (“The lawyer’s own interests should not be permitted to have an adverse effect on representation of a client”). The motion to dismiss is therefore denied insofar as it pertains to the alleged failure to disclose.[13]
3. “Garden Variety Negligence” and Chapter 93A
“There is nothing alleged in RFF’s complaint,” say the B&L defendants, “that rises above mere garden-variety negligence”; therefore, there can be no liability under Chapter 93A. Both the premise and the conclusion, however, are flawed. The Chapter 93A count alleges both negligent and intentional conduct; moreover, even “a negligent misrepresentation may be so extreme or egregious as to constitute a violation of G.L.c. 93A, §11,” Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 62 (2004), citing Golber v. BayBank Valley Trust Co., 46 Mass.App.Ct. 256, 261 (1999), and Glickman v. Brown, 21 Mass.App.Ct. 229, 235 (1985), as may the breach of a fiduciary duty of disclosure, NRT New England, Inc. v. Moncure, 78 Mass.App.Ct. 397, 403 (2010); Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 173 (1999).
*506 ORDER
For the foregoing reasons, the B&L defendants Motion to Dismiss is DENIED.

 Defendant Certain Underwriters of Lloyd’s London has not moved to dismiss.

 After Link discovered the BD mortgage, it demanded to be discharged, alleging that it had neither assented to nor received the benefit of any loan from BD. BD refused to discharge the mortgage. On December 15, 2006, Link filed an action in Massachusetts Superior Court captioned Link Development LLC v. Stuart Sojcher et al., Suffolk Superior Court Docket No. SUCV2006-5242, seeking to discharge the BD mortgage.

 RFF’s foreclosure was scheduled and re-scheduled multiple times due in part to multiple bankruptcy filings by Link.

 Robert Wallace is the trustee of BD Lending Trust.

 RFF did not yet know the name of B&L’s malpractice insurer and thus did not include it in the notice.

 The Amended Complaint dropped a claim for indemnity, added Lloyd’s London as a defendant, and added claims for intentional misrepresentation.

 This straightforward formulation is amply supported in the caselaw. See, e.g., Psy-Ed Corp. v. Klein, 459 Mass. 697, 720 (2011) (“dismissal under rule 12[b][9] maybe appropriate if parties and issues are identical to those in prior pending action”); M.J. Flaherty Co. v. United States Fid. & Guar. Co., 61 Mass.App.Ct. 337, 339 (2004) (similar); Levine v. Bernstein, 55 Mass.App.Ct. 1108 (2002) (Rule 1:28 decision; similar); and Davis Inv. Corp. v. Thayer Assocs., Inc., 1999 Mass.App.Div. 202, 203 (1999) (“Dismissal is appropriate under Rule 12(b)(9) only where the parties and issues are identical to those in the prior pending action”), all citing Harvard Community Health Plan, Inc. v. Zack, 33 Mass.App.Ct. 649, 652 (1992) (“A dismissal under 12(b)(9) may be appropriate if the parties and issues are identical to those in the prior pending action”).

 The defendants’ Rule 12(b)(9) defense suffers from an additional defect with respect to the Federal action, in that the Rule “pertains only to an action ‘in a court of the Commonwealth.’ It does not cover... an action in a United States District Court.” Smith & Zobel, supra, at 218, citing Doe v. Governor, 381 Mass. 702, 706 (1980); accord, Seidman v. Central Bancorp, Inc., 2003 WL 369678 (Mass.Super.; van Gestel, J.) [15 Mass. L. Rptr. 642]. In Seidman, the court noted that the federal and state actions sought identical relief and that there was a near-total identity of parties, but still observed that Mass.R.Civ.P. 12(b)(9) “may not be the proper vehicle for dismissal because the prior pending action is not in a court of the Commonwealth . . .’’It stayed the Superior Court action so as not to interfere with the federal proceeding, an approach that does not commend itself here, at least at this juncture. Although a favorable result in federal court would mitigate RFF’s damages, it would not eliminate them, and the federal case will not be adjudicating the malpractice and other claims asserted here. Whether or not the trial of this action should await the federal trial is an issue for another day, but there is no sense in delaying the pretrial proceedings.

 The B&L defendants have attached two documents to their Supplemental Memorandum of Law in Support of Defendants’ Motion to Dismiss: a letter from MacClaxy to Freedman dated Marcy 7, 2011 (Exh. A), and an email from Richard Briansky of Prince Lobel to Shepard Davidson of B&L (Exh. B). Neither was attached to, referenced in, or necessarily relied upon in framing the complaint; they therefore may not be considered on a Rule 12(b)(6) motion. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004); Harhen v. Brown, 431 Mass. 838, 840 (2000).

 One of the claims in the original complaint — Count III, for implied indemnity — has been mooted — and with it, the defendants’ arguments for dismissing it — by the filing of an Amended Complaint.

 E.g., Colorado Formal Ethics Op. 113 (November 19, 2005) (“When, by act or omission, a lawyer has made an error, and that error is likely to result in prejudice to a client’s right or claim, the lawyer must promptly disclose the error to the client”); In re Ring, 141 Ill.2d 128, 143 565 N.E.2d 983 (1990) (attorney disciplined in part for failing to inform client of dismissal of her appeal due to his failure to file a brief); In re Hoffman, 700 N.E.2d 1138 (Ind. 1998) (attorney disciplined for failing to explain adequately to client the effect of his malpractice in failing to file claim within limitations period); Attorney Grievance Comm'n of Md. v. Pennington, 387 Md. 565, 876 A.2d 642 (2005); Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995); In re Tallon, 86 A.D.2d 897, 447 N.Y.S.2d 50 (1982); Columbus Bar Ass'n v. Bowen, 87 Oh.St.3d 126, 707 N.E.2d 708 (1999); In re Knappenberger, 337 Or. 15, 90 P.3d 614 (2004); In re Burtch, 112 Wash.2d 19, 770 P.2d 174 (1989); Wis. Eth. Op. 82-12. Massachusetts certainly follows this approach, see the Shaughnessy and Keefe cases cited in text, and also the rule that although an ethical violation is not malpractice per se, it “may be some evidence of the attorney’s negligence.” Fishman v. Brooks, 396 Mass. 643, 650 (1986).

 E.g., Asphalt Engineers, Inc. v. Galusha, 160 Ariz. 134, 770 P.2d 1180, 1183 (Ariz.App. 1989) (affirming punitive damages award against attorney for, in part, “attempt[ing] to cover-up his misconduct”); Beal Bank v. Arter & Hadden, 42 Cal.4th 503, 167 P.3d 666, 66 Cal.Rptr.3d 52 (Cal. 2007) (“attorneys have a fiduciary obligation to disclose material facts to their clients, an obligation that includes disclosure of acts of malpractice”; statute of limitations tolled during period of nondisclosure); Beis v. Bowers, 649 So.2d 1094, 1097 (La.App. 1995) (allowing emotional distress damages for attorney’s failure to disclose to client his failure to timely file claim, even though underlying claim was not meritorious); McAlister v. Slosberg, 658 A.2d 658 (Me. 1995) (similar); Metcalf v. Waters, 970 S.W.2d 448 (Term. 1998) (similar); Deutsch v. Hoover, Bax & Slovacek, LLP, 97 S.W.3d 179 (Tex.App. 2002); but see Fitch v. McDermott, Will & Emery, 401 Ill.App.3d 1006, 1025, 929 N.E.2d 1167 (2010) (holding that plaintiff had “failed to plead any facts” suggesting that law firm’s preparation of plaintiffs estate plan “gave rise to a duty to advise [plaintiff] about” its work on his deceased mother's estate plan and of a potential malpractice claim in connection with it, having found “no case that would require an attorney to affirmatively advise his client of his negligence and the statute of limitations for suing him”); Leonard v. Dorsey & Whitney, 553 F.3d 609 (8th Cir. 2009) (Minnesota law; no fiduciary obligation of disclosure, and therefore no claim, unless attorney’s mistake created a conflict requiring withdrawal); Weiss v. Manfredi, 83 N.Y.2d 974, 639 N.E.2d 1122, 616 N.Y.S.2d 325 (1994) (“an attorney’s failure to disclose malpractice does not give rise to a fraud claim separate from the customary malpractice action”). For a more comprehensive discussion, see Cooper, “The Lawyer’s Duty to Inform his Client of his Own Malpractice,” 61 Baylor L. Rev. 174, esp. at 209-13 (2009).

 There is also the related claim that B&L improperly communicated with Freedman ex parte (that is, not through Briansky who was ostensibly representing RFF in connection with its claim against B&L), to buy peace. The sufficiency of this claim cannot be determined on a motion to dismiss.