Billings, Thomas P., J.
For the reasons that follow, Defendants Burns & Levinson LLP, Michael MacClaiy, and Francis Perkins’s Motion to Compel Deposition Testimony and Production of Documents from Old Republic National Title Insurance Company, John Connolly, Jr., and David A. Miller is ALLOWED IN PART and DENIED IN PART.
BACKGROUND
This is a legal malpractice action in which the plaintiff (“RFF”), a private lender, alleges that the attorney defendants (collectively, “B&L”) failed it in the work they did in connection with a mortgage loan RFF made to Link Development, LLC (“Link”), secured by four contiguous parcels comprising approximately 23 acres and abutting Route 1 in Saugus, Massachusetts. There were three mortgages on all or part of the property (the “BD,” “Desert Palm,” and “Desert Pine” mortgages), all of which were still in place when the loan closed on October 15, 2007. What RFF knew about them, and what B&L did about them and disclosed to RFF, are in dispute.[1]
Link soon fell into default, and RFF took steps to foreclose. On March 10, 2009 B&L notified Old Republic, which had insured the title to RFF, of “an issue with the title policy”; specifically, the Desert Palm mortgage, which the policy listed as subordinate to RFF’s mortgage but which, “apparently due to an oversight by the title examiner,” was still in a priority position. Old Republic took no action in the short *89 term, and the foreclosure auction remained scheduled for March 26, 2010.
The day before the auction, Russell & Associates (“Russell”), who had been assigned the Desert Palm mortgage, filed an action in the Land Court against RFF and others, captioned Russell & Assocs., LLC v. Robert V. Wallace, Jr. et al., Land Court Docket No. 10 MISC 425681 (the “Land Court action”), seeking to enjoin foreclosure and establish the priority of the Desert Palm mortgage. B&L appeared for RFF. The foreclosure sale was allowed to proceed, but the action is still pending. At some point — apparently, quite soon after the auction — Old Republic retained Richard Briansky, Esq. of Prince Lobel in connection with the Russell claim. Briansky appeared for RFF in the Land Court action on May 6, 2010. Nearly nine months later, on January 28, 2011, Old Republic sent B&L a notice of reservation of rights, noting that it had been providing a defense against the Russell claims concerning the Desert Palm mortgage, but stating that it was “apparent” from its investigation that “the issuance of the policy without exception for the BD mortgages was the result of a mutual mistake.” Old Republic would “provide a defense against the claims of priority by the holder of the BD mortgages,” but the defense would be “under a complete reservation of Old Republic’s rights to deny coverage as to the BD mortgages,” as well as its right to recoup defense costs if there was in fact no coverage. It promised to “retain Attorney Briansky to provide a defense on behalf of RFF against the BD mortgages.”
On June 1, 2011 Briansky filed a complaint on RFF’s behalf in United States District Court for the District of Massachusetts against Link, BD, and others, captioned RFF Family Partnership, LLP v. Link Development, LLC et al., C.A. No. 1:11-cv-10968-NMG. The federal action sought to void the BD mortgage and to collect the remaining balance on its loan from both Link and Karll. It was recently tried to a judgment unfavorable to RFF, one aspect of which was a ruling that the promissory note that B&L prepared to evidence RFF’s mortgage loan to Link did not provide for compound interest, with the result that RFF — which purchased the property at its own auction, at a price that reflected its assumption that interest was to be compounded — owed Link a $417,734 surplus, which was only partially offset by its costs of foreclosure and back taxes.
B&L now seeks documents from Old Republic and testimony from two of its former employees. Old Republic has already produced its underwriting file, and B&L does not seek documents pertaining to the malpractice case (this case) against it. It is interested in documents concerning the other litigation relating to the title issues on the Saugus land. Its theory of relevance is twofold: it means to dispute the reasonableness of the attorneys fees sought as damages, and it “intend[s] to prove at trial that Old Republic’s mishandling of RFF’s title claim and related litigation was the proximate cause of the damages RFF now seeks to recover from the B&L Defendants in this malpractice action.” B&L Memorandum of Law, p.2.
RFF and Old Republic have both objected, asserting (for the most part) the attorney-client privilege and the protection for attorney work product. Old Republic has produced a privilege log, with descriptions of 295 withheld documents. B&L has usefully grouped the documents, according to the descriptions provided, into the following nine categories (titled by B&L):[2]
Category Description # of Items
A Communications between Old Republic and its outside counsel, Attorney Scott Carroll 56
Internal Old Republic communications concerning B&L’s subpoenas to Old Republic
Communications between and among Old Republic, Prince Lobel, and RFF that relate solely to the claims against B&L 30
D Communications between Old Republic and Prince Lobel concerning the underlying tifie claim and title litigation 138
Communications between Old Republic and representatives of RFF (Robert Freedman and Marc Sidoti) concerning coverage for the underlying title claim and title litigation 12
Internal Old Republic documents and emails concerning the underlying title claim and title litigation (including a Claim Master Printout) 25
G Documents labeled “irrelevant,” “equally accessible,” or “confidential” 10
H 1 Communications between Prince Lobel and Link Development’s counsel identified as “attorney-client privileged”
Communications between and among Old Republic, Prince Lobel and representatives of RFF where it is not clear whether the subject relates to the underlying title claim and title litigation, or claims versus B&L 16
TOTAL 295
DISCUSSION
Categories A-C: B&L concedes that the 93 documents in these three categories are privileged and need not be produced.
Category D: Communications between Old Republic and Prince Lobel concerning the underlying title claim and title litigation.
Also privileged are communications between an insurer and the counsel whom it has retained to defend a claim against its insured. In this case, the communications in question are between or among *90 Mr. Briansky and others at his firm and Old Republic’s in-house attorneys (“claims counsel” Dave Miller, and Elizabeth McGinnity). Old Republic’s outside counsel (Scott Carroll) and/or RFF’s principal (Robert Freedman) are occasionally included as well.
Whenever an insurer provides a defense to an insured, these two parties and the defense attorney occupy a “complicated ‘tripartite’ relationship.” Real Estate Bar Ass’n for Mass. v. National Real Estate Info. Servs., 459 Mass. 512, 531 n.36 (2011). “Even when the attorney plays a dual role in representing multiple parties, such as when the attorney is paid by an insurance company to represent an insured, the lawyer owes a duly to represent fully the interests of each client.” Id., citing McCourt Co. v. FPC Properties, Inc., 386 Mass. 145, 146 (1982); accord, Imperiali v. Pica, 338 Mass. 494, 499 (1959).
Unfettered communication with both clients on the subject of the joint representation is therefore a practical necessity. Both are directly interested in the case, its progress and any material developments, counsel’s litigation and trial strategy, his assessments of the merits and likelihood of success, his views on whether the case ought to be tried or settled, and myriad other issues, many of which require expression of counsel’s strategic judgments and mental impressions.[3] In communicating with the insurer on these matters, the attorney is rendering advice and counsel to a client as a necessary aspect of his representation, both of the insurer and of the insured.
Although no Massachusetts appellate case has addressed the issue of privilege in this context, it is plain that because the insurer is a client under Massachusetts law, the attorney-client privilege will normally attach to communications between the attorney and the insured, the defendant, or both. At least one decision from this Court has so held. Rhodes v. AIG Domestic Claims, Inc., 2006 WL 307911 (Mass.Super. 2006; Gants, J.) (holding that “[w]hen an attorney, as here, jointly represents two clients, she does not waive the attorney-client privilege by sharing privileged communications made by one client with the other client”; therefore, defense counsel “did not waive any attorney-client privilege or work product protection by sharing confidential information with [the insurer and claims manager] which it had obtained from [the client]”), citing Federal Deposit Ins. Corp. v. Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000).
Some courts have found the issue more complicated (especially, under California law) when there has been a reservation of rights under the policy, and several of these have concluded that in these circumstances, the interests of insurer and insured are sufficiently divergent that the usual assumption — that attorney-client communications are not privileged if sought by either of the two joint clients (insurer and insured), but are privileged as to the outside world — is inapplicable. See CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP, 2013 WL 315716 (E.D.Penn. 2013) (holding under Pennsylvania law that insurer seeking a declaratory judgment against insured as to coverage limit was not entitled to discover communications between defense counsel it had retained and its insured); Fidelity Nat. Financial, Inc. v. National Union Fire Ins. Co., 2012 WL 4443993 (S.D.Cal. 2012) (holding that under California law, communications between defense counsel and insurer which had reserved rights were not privileged); First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co., 163 F.R.D. 574 (N.D.Cal. 1995) (same); cf. Continental Cas. Co. v. St Paul Surplus Lines Ins. Co., 265 F.R.D. 510, 517-29 (E.D.Cal. 2010) (holding under California law that communications between excess insurer which had no duty to defend and counsel retained by primary insurer to defend insured were not privileged in coverage litigation between insurers).
Others have taken the opposing view. See Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 19 (1st Cir. 2012) (applying Massachusetts law to hold that where several insurers defended and partially indemnified insured, the “common interest” doctrine meant that communications between defense counsel and any one insurer were privileged as to outsiders but not as to the other insurers, reservations of rights notwithstanding); Enns Pontiac, Buick & GMC, Inc. v. Flores, 2011 WL 6181924 (E.D.Cal. 2011) (holding under federal law that where there is a reservation of rights, insurance defense counsel represents only the insured, but the common interest doctrine protects communications between counsel and insurer from discovery by outsiders); Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc., 212 F.R.D. 567, 571-72 (E.D.Cal. 2002) (same); In re Skiles, 102 S.W.2d 323, 324, 326-27 (Tex.App. 2003) (where insureds were sued, insurer denied coverage, and insureds’ defense counsel sued insurer for coverage and defense, counsel's communications with insurer reporting on the status of insured’s defense in hope of facilitating settlement of the coverage case were privileged as to outsiders).
I agree generally with the cases in the latter group,[4] and therefore hold that even where an insurer has questioned coverage, reserved its rights, but is still providing a defense, communications concerning the defense between the defense counsel and either the insured or the insurer (or both) are accessible to both, but privileged from outside scrutiny.[5] In such a case there is as yet no binding determination as to coverage.[6] Both the insurer and the insured are potentially at risk on the loss, and each may be expected to take an active interest in the litigation and to require the defense attorney to keep it informed, not only as to matters of public record but also concerning his mental impressions, strategy, and judgment on issues relating to liability, but not coverage. On liability issues, the interests of the two clients are and remain in full accord.
*91 It may be that in such a case, the tripartite attorney-client relationship is ordinarily still intact under Massachusetts law, notwithstanding that there is an issue (coverage), outside the scope of the representation, on which the clients’ interests diverge.[7] This would mean that a communication by the attorney with either client within the scope of the joint representation would be discoverable by the other client, see Beacon Oil Co. v. Perelis, 263 Mass. 288, 293 (1928), but still privileged as to the rest of the world, absent waiver or an exception to the privilege.
Even if defense counsel and the insurer paying the bills cease to be attorney and client once the insurer reserves its rights, however, the remaining three-way relationship surely fits comfortably within the common interest doctrine.
If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged . . . that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.
Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 449 Mass. 609, 614, 617 (2007) (quoting and “adopt[ing] the principle of Restatement (Third) of the Law Governing Lawyers §76(1) as the law of the Commonwealth”). This was the holding in the Vicor, Lectrolarm, and Enns Pontiac cases, which recognized that even after issuance of a reservation of rights, the insurer and the insured still share a common interest in bringing the case to a successful conclusion. They ought to be permitted also to share information in furtherance of that common goal, without fear of discovery by those whose interests may be mimical to their own.
The present case illustrates the point, perhaps even better than some. Mr. Briansky, retained by Old Republic, is not only defense counsel in the Land Court case (in which he defended RFF for nearly nine months before Old Republic issued the reservation of rights); he is also plaintiffs counsel in the federal case and in this case. The federal action was an attempt to clear RFF’s title of the BD mortgage; the present case is an effort to secure a judgment against a third party for all or part of the putatively insured loss. Old Republic, apparently, is financing all of these efforts, in which its interests are fully congruent with RFF’s, and one may safely assume that it is kept informed concerning the litigation strategy. The parties’ confidential communications in furtherance of the joint enterprise are therefore to be treated as privileged. The documents in Category D need not be produced.
Category E: Communications between Old Republic and representatives of RFF (Robert Freedman and Marc Sidoti) concerning coverage for the underlying title claim and title litigation.
The documents in Category E, by contrast, do not appear from the descriptions to fall within any recognized privilege. Freedman and Sidoti are not, so far as I know, attorneys. Old Republic’s in-house counsel did not and could not have had an attorney-client relationship with an Old Republic insured; witness, for example, the fact that his correspondence with Freedman denominated items 30, 44, and 45, and 147 pertains to coverage and the reservation of rights, matters on which the interests of insured and insurer were inherently adverse. The remaining items in this category pertain to “discussions with insured and opposing parties,” “scheduling,” “billing,” “coverage payment,” and the insured’s “wish[) for a call-back,” none of which would appear to fall under either the attorney-client privilege or work product protection. The documents in Category E should be produced, redacted if necessary to protect truly privileged material, if any.
Category F: Internal Old Republic documents and emails concerning the underlying title claim and title litigation (including a Claim Master Printout).
With some exceptions, each of the documents in Category F was authored by, sent to, or highlighted or annotated by Dave Miller, the Old Republic in-house “claims counsel” assigned to the RFF matter. Most were generated after the title disputes arose, and appear to pertain to the substance of those disputes. For the most part, they appear from the descriptions provided to be protected as attorney work product, and I see no reason to question Old Republic’s judgment that they are so in fact.
Several merit special mention. Items 1, 2, 3, 4, 5, 10, 56, 57, 58, 74, 101, 106, 136, 144, are various non-privileged documents bearing highlighting and/or notations by Dave Miller. Items 1, 2, 3 and 4 were created, in their unadorned form, before the title disputes arose; the others, afterward. The unadorned documents would not be protected, but the notations and highlighting presumably reflect the mental impressions of in-house counsel and need not be produced; likewise, the covering e-mails.[8] Cf. Commonwealth v. Stande, 69 Mass.App.Ct. 1112 (Rule 1:28 decision) (holding that non-exculpatory material in prosecutor’s notes was “protected as work product pursuant to Mass.R.Crim.P. 14(a)(5)”), citing Commonwealth v. Bing Sial Liang, 434 Mass. 131, 132 (2001) (same holding with respect to victim witness advocate’s notes).
Items 33, 81, 126, and 295 pertain to “litigation costs” and “Billing.”
[A]s a general proposition, billing records are just that — records of amounts being billed to a particular client for services rendered and, presumably, a description of those services, the identity of those *92 who rendered them and the time they each spent in doing so, and actual costs incurred. This is usually the stuff of fact, not opinion ... It is not likely that the billing records will contain entries that implicate an attorney’s or expert’s “mental impressions, conclusions, opinions, or legal theories,” Mass.R.Civ.P. 26(b)(3) . . .
McCarthy v. Slade Assocs., Inc., 463 Mass. 181, 197-98 (2012). Redaction, therefore, is generally the suggested cure for privilege issues in legal bills.[9] Id. Old Republic or Prince Lobel are to produce the bills to date, redacted if necessary to shield protected content.
Item 128 is an e-mail from Miller to a Bob Chipinsky (who it appears was an Old Republic manager; see footnote 8, supra) attaching earlier e-mails from Miller and Carroll, and also “Link v. Sojcher settlement agreement and 2009 appraisal.” The e-mails are privileged; the attachments are not.[10]
Category G: Documents labeled “irrelevant,” “equally accessible,” or “confidential.”
These are not privileges. Old Republic is to review these items again and produce any that are not subject to any recognized privilege and which are responsive to the document request.
Categoiy H: Communications between Prince Lobel and Link Development’s counsel identified as “attorney-client privileged.”
The single document listed is a June 1, 2010 email from Valerie Derby to Scott Stevenson, described as “Conrespondence attaching RFF’s special motion to dismiss in Land Court,” and withheld on ground of attorney-client privilege. B&L is owed at least a specification of who the sender and recipient are, and the basis for the assertion of privilege.
Categoiy I: Communications between and among Old Republic, Prince Lobel and representatives of RFF where it is not clear whether the subject relates to the underlying title claim and title litigation, or claims versus B&L.
With one exception, each of these items was withheld on ground of attorney-client privilege. So long as the communications concerned legal advice, the subject is immaterial.
(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.
Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 303 (2009) (emphasis supplied) (quoting and endorsing “ [t]he classic formulation of the attorney-client privilege . . .” in 8 J. Wigmore, Evidence §2292 (McNaughton rev. ed. 1961)). The privilege has its exceptions, but none permitting disclosure to persons not party to a dispute that was the subject of the communication.
The aforementioned exception is item 293, consisting of Dave Miller’s “[bjandwritten notes regarding claim, litigation, and claims counsel’s mental impressions,” which are withheld on grounds of “WP/MI,” i.e., attorney work product consisting of the attorney’s mental impressions.
The [attorney work product] doctrine encompasses two types of work product: fact work product and opinion work product. Fact work product is protected to a lesser extent than opinion work product, and here disclosure may be ordered on the plaintiffs showing . . . that they have a substantial need for the material and cannot obtain a sufficient equivalent by other means. Opinion work product, in contrast, is generally not open to discoveiy.
Chambers v. Gold Medal Bakery, Inc., 464 Mass. 383, 391 n.22 (2013); see Mass.R.Civ.R 26(b)(3); see Com-cast at 314-15 ("Courts have disagreed over whether the civil rule protection for opinion work product is ‘absolute’ or merely ‘heightened.’ Even if not absolute, disclosure is appropriate only in rare or ‘extremely unusual’ circumstances”).
As with the attorney-client privilege, work product protection is not limited to adversaries in litigation. See Comcast at 318 n.30 (“there is no rule that bars application of work product protection to documents created prior to the event giving rise to litigation”) (citation omitted); Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 309 (1991) (noting that requested internal documents created by Attorney Generals Office on prior related litigation would not be discoverable in accordance with work product doctrine); A.W. Chesterton Co. v. Allstate Ins., 2001 WL 170460 (Mass.Super. 2001; McHugh, J.) [12 Mass. L. Rptr. 550], and cases cited (“the majority view” is that “the work product privilege applies to documents created in anticipation of litigation other than the litigation in which the documents are sought”).
This case is not one of those “singular instances ‘when the activities of counsel are inquired into because they are at issue in the action before the Court, there is cause for production of documents that deal with such activities, though they are work product.’ ” Ward v. Peabody, 380 Mass. 805, 818 (1980) (citation omitted). In particular, B&L’s theoiy that RFF’s damages are attributable to botched strategy on Old Republic’s part is, at best, a strained application of the supervening cause rule, since the cloud on RFF’s title existed, with harmful consequences already in place, the moment the deal closed. No negligent act by a third-pariy actor was needed to perfect it, nor was the harm in any sense unforeseeable. See Morrison v. Medaglia, 287 Mass. 46, 49-50 (1934), for a list of unsuccessful attempts to identify a third-party culprit and thereby “break the causal connection” between the defendant’s negligence and the plaintiffs harm.
*93 If the theoiy is instead a failure to mitigate damages — on which B&L will have the burden of proof— this still would not place the thought processes of Old Republic’s counsel in issue; rather, the question will be whether RFF’s efforts to control its losses were objectively reasonable. Baglio v. New York Cent. R. Co., 344 Mass. 14, 18 (1962). Reasonableness of attorney fees is likewise determined objectively. Unless and until RFF places its own reliance on Old Republic’s counsel at issue in the litigation, the documents in Category I need not be produced.
ORDER
For the foregoing reasons, Old Republic shall, within ten days hereof, produce documents (redacted where appropriate) in accordance with the rulings herein. Questioning of and instructions to deposition witnesses associated with Old Republic are to be guided by the same principles.

A. more detailed rendition of the allegations of the Complaint may be found in RFF Family Partnership, LP v. Burns & Levinson, LLP, 2012 WL 6062740 (Mass.Super. 2012; Billings, J.) [30 Mass. L. Rptr. 502],

The table is reproduced verbatim from B&L’s supplemental brief, which also lists all 295 withheld documents by category.

The insurer will also be interested in the actual and projected cost of the litigation, as the client may be as well (particularly in the case of a “wasting” policy in which defense costs count against the coverage limit).

I would stop short of the Texas court’s holding in Skiles, however, in a case where defense counsel was independently retained by the insured and (more importantly) his discussions with the insurer addressed the merits of both liability and coverage.

The insured may accept the reservation, or it may retain independent counsel paid for by the insurer. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 406-07 (2003); Magoun v. Liberty Mut. Ins. Co., 346 Mass. 677, 685 (1964). If it accepts the reservation and continues with counsel previously retained by the insurer, however — as RFF did in this case — the tripartite relationship continues. The attorney defending the insured may not, of course, simultaneously represent the interests of the insurer on the coverage issue. See Rules of Professional Conduct (SJC Rule 3:07), Rule 1.7(b), Comment 10; Rule 1.8(f)(2).

Indeed in some cases, such as where both covered and uncovered claims are asserted, the coverage issue cannot be resolved except by resolution of the underlying issues of liability, in which case the insurer is contractually obligated to provide a defense to all counts. Aetna Cas. & Sur. Co. v. Continental Cas. Co., 413 Mass. 730, 732 n.1 (1992); Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318, 323 & n.15 (1983).

I note, however, that Old Republic’s outside counsel in this matter appears to take a contrary view, stating at 14 of his brief that “Attorney Briansky represents RFF, not Old Republic.”

I note that although there is apparent agreement that Miller was an attorney and held the title of “claims counsel,” there is no affidavit to this effect or delineating his duties while at Old Republic. From the descriptions of the documents withheld, it is reasonable to infer that Miller was acting in the role of in-house counsel providing legal analysis and advice, and I do. The better and wiser practice would have been to establish this by affidavit. See Superior Court Rule 9A(a)(4).

Of course, an in-house attorney’s communications with his employer about the bills of outside counsel may be privileged in their entirety, if they constitute legal advice.

Old Republic’s brief argues at some length, and mistakenly, that settlement negotiations “have their own privilege.” As a rule of evidence, settlement negotiations are “not admissible to prove liability for, invalidity of, or amount of the claim or any other claim,” Mass. Guide to Evidence §408; Morea v. Cosco, Inc., 422 Mass. 601, 603-04 (1996), but may be offered for another purpose. Unless such negotiations occur in a mediation before a duly qualified and credentialed mediator, see G.L.c. 233, §23C, there is no privilege preventing their discovery.